In the Matter of the MINOR CHILDREN OF F. B., Their Mother, Petitioner,

v.

Eileen CARUTHERS, County Director of the Cape Girardeau County Welfare Office, and Virginia Miller, Louise Wright and Edna Gerlach of the Cape Girardeau County Welfare Office, Respondents.

No. 30246.

St. Louis Court of Appeals.

Missouri.

April 21, 1959.

George A. Murray, Cape Girardeau, for petitioner.

Stephen N. Limbaugh, Cape Girardeau, for respondents.

WOLFE, Presiding Judge.

This is an original proceeding in habeas corpus brought by the mother of three minor children to obtain custody of the children who are presently in the custody of the Director of Welfare for the County of Cape Girardeau. The children were placed in such custody by an order of the juvenile court upon a finding that they were neglected within the meaning of the statute defining neglected children. The writ is predicated upon the proposition that the statute defining neglected children is unconstitutional.

The facts giving rise to the petition for the writ are as follows: The three children involved are respectively age 8 years, 6 years, and 16 months. They resided with their mother who is a widow and lives in the County of Cape Girardeau. Their support was derived entirely from monthly payments received by the mother from the U. S. Railroad Retirement Board. These payments were made by reason of the death of their father who had been a railroad worker.

In August of 1958, a juvenile officer of Cape Girardeau filed a petition in the Juvenile Division of the Cape Girardeau Court of Common Pleas, charging that the children were without proper care, custody and support, and were in need of treatment. After a hearing, at which the mother, represented by counsel, was present, the court found that the children were without proper care, custody or support, and were placed in the legal custody of the Director of Welfare with directions to place them in suitable foster homes. An appeal was taken from the judgment and is now pending in this court.

On application of the mother, a writ of habeas corpus was issued and the sole question before us is the constitutionality of the statute under which the juvenile court acted. We issued the writ, regardless of the fact that the children's custody had not been finally determined on appeal, because the constitutionality of the statute under which the court proceeded was challenged. Since an unconstitutional law is no law, its validity is open to attack, as to the question of jurisdiction, at any stage of the proceeding. Ex parte Lucas, 160 Mo. 218, 61 S.W. 218; Ex parte Lerner, 281 Mo. 18, 218 S.W. 331; Griggs v. Venerable Sister Mary Help of Christians, Mo. App., 238 S.W.2d 8.

The statute in question is a section of the Juvenile Code of Missouri, adopted in 1957, relating to the jurisdiction of juvenile courts. It is Section 211.031 RSMo 1949, V.A.M.S., and that part of the section which the petitioner claims is unconstitutional is as follows:

"Jurisdiction of juvenile court over children who are neglected or charged with crime.

"Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

"(1) Involving any child who may be within the county who is alleged to be in need of care and treatment because:

"(a) The parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being; except that reliance by a parent, guardian or custodian upon remedial treatment other than medical or surgical treatment for a child shall not be construed as neglect when the treatment is recognized or permitted under the laws of this state; or

"(b) The child is otherwise without proper care, custody or support; or

"(c) The behavior, environment or associations of the child are injurious to his welfare or to the welfare of others; or

"(d) The child is alleged to have violated a state law or municipal ordinance;"

Section 211.181, provides that when a child is found by the court to come within the provisions of Section 211.031, above quoted, it may proceed as follows:

"(1) Place the child under supervision in his own home or in custody of a relative or other suitable person upon such conditions as the court may require;

"(2) Commit the child to the custody of:

"(a) A public agency or institution authorized by law to care for children or to place them in family homes;

"(b) Any other institution or agency which is authorized or licensed by law to care for children or to place them in family homes;

"(c) An association, school or institution willing to receive it in another state if the approval of the agency in that state which administers the laws relating to importation of children into the state has been secured;

"(d) The juvenile officer; or

"(3) Place the child in a family home;

"(4) Cause the child to be examined and treated by a physician, psychiatrist or psychologist and when the health or condition of the child requires it, cause the child to be placed in a public or private hospital, clinic or institution for treatment and care, except that nothing contained herein authorizes any form of compulsory medical, surgical, or psychiatric treatment of a child whose parents or guardian in good faith are providing other remedial treatment recognized or permitted under the laws of this state.

"(5) Suspend or revoke a state or local license or authority of a child to operate a motor vehicle, Laws 1957, p. 642, § 1 (§ 211.200)."

The contention advanced by the petitioner is that Section 211.031 is violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States of America and Article I, Section 10, of the Constitution of Missouri, V.A. M.S., in that the statute is so vague, indefinite and uncertain that no ascertainable standard of conduct regarding the care of children is fixed by it.

We are cited to a number of criminal cases involving charges under statutes wherein the alleged crime was so vaguely described as to make it uncertain what acts would constitute an offense under the statute. These cases are without application to the matter before us. We are not dealing with the protection afforded by the due process clause to those charged with crime. This is true even in cases where a child is charged as a delinquent by reason of a crime

it has committed. It has been consistently held that since no crime has been charged in such cases and since the purpose of the proceeding is to correct and not to punish, the constitutional guarantees in respect to criminal cases do not apply. State v. Heath, 352 Mo. 1147, 181 S.W.2d 517; Ex parte Naccarat, 328 Mo. 722, 41 S.W.2d 176; State ex rel. Matacia v. Buckner, 300 Mo. 359, 254 S.W. 179.

In regard to neglected children the courts have long exercised jurisdiction to enforce the State's right to protect infants. Its origin stems from the early concept of *parens patriae*. In Wellesley v. Wellesley, English Reports Reprint 4, 1078, 11 Bligh N.S. 124, in 1828, Lord Redesdale traced the jurisdiction of courts of chancery with respect to the care of infants from feudal times and stated that the court's authority in such matters had not been questioned for 150 years. The Missouri Supreme Court in 1903, in Ex parte Loving, 178 Mo. 194, loc. cit. 219, 77 S.W. 508, loc. cit. 514, quoted with approval from Ex parte Crouse, 4 Whart., Pa., 9, loc. cit. 11, wherein the court said:

> "It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that, of strict right, the business of education belongs to it. That parents are ordinarily intrusted with it is because it can seldom be put into better hands; but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held, as they obviously are, at its sufferance? The right of parental control is a natural, but not an unalienable one."

■ The jurisdiction of chancery courts, as set out in Article V, Section 10, of the Missouri Constitution of 1820, V.A.M.S., provided:

> "§ 10. The *court of chancery* shall have original and appellate jurisdiction in all matters of equity, and a general control over executors, administrators, guardians, and minors, subject to appeal in all cases to the supreme court, under such limitations as the general assembly may by law provide."

By this the court had general control over minors and it is difficult to conceive of a statement granting a wider scope of jurisdiction.

■ It is therefore evident that for a great span of time prior to the enactment of the statute under consideration the courts exercised broad jurisdiction in relation to infants. The fact that this jurisdiction is now exercised by a "juvenile court" sets up no new tribunal, for the act itself, Section 211.021, defines "juvenile court" as follows:

> "(3) 'Juvenile court', means the Cape Girardeau court of common pleas and the circuit court of each county, except that in the judicial circuits having more than one judge, the term means the juvenile division of the circuit court of the county;" State ex rel. Matacia v. Buckner, 300 Mo. 359, 254 S.W. 179.

Examining Section 211.031 in the light of what we have heretofore said, and looking particularly at subsection (b), which is said to be too broad, it will be seen that it follows the section which covers cases where parents or other persons responsible for the child are neglectful and it states that jurisdiction attaches when "the child is otherwise without proper care, custody or support;" It is indeed broad, but it cannot be said that it is more extensive than the jurisdiction that vested in equity for many years.

The Missouri Supreme Court en banc stated in State ex rel. Cave v. Tincher, 258 Mo. 1, loc. cit. 13, 14, 166 S.W. 1028, loc. cit. 1030:

> "It may be contended that the natural rights of parents in the care, control, and education of their children cannot be interfered with by the state;

but if it be shown, as it is required to be in the act under consideration, that parents are corrupt, immoral, or otherwise incompetent, the state, which has a paramount interest in the proper personnel of its members as citizens, may, where it is found necessary, regulate their conduct in this regard. * * *

"The conclusion is therefore authorized that the State in its character of *parens patriae* may provide for the comfort and promote the well-being of not only infants but persons of defective understanding, or so burdened with other misfortunes or infirmities as to be unable to care for themselves. So important is this governmental function that the limitations of the Constitution are to be so construed, if possible, as to not interfere with its legitimate exercise."

And to the same effect is Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A. L.R. 286. See also Juvenile Courts of Missouri, by Noah Weinstein, Washington University Law Quarterly, 1957, Volume 1.

■ Courts are always reluctant to strike down legislative enactments and when it is asserted that the statute is so indefinite as to result in a denial of due process, we must consider it in the light of the problem with which the legislature was attempting to deal. Illinois Steel Co. v. Fuller, 216 Ind. 180, 23 N.E.2d 259. The statute deals with children in need of care that they are not receiving and this may arise in so many ways that it would be impossible to state them all with great exactitude. The words used have acquired an accepted legal meaning and are therefore not vague and indefinite. Boshuizen v. Thompson & Taylor Co., 360 Ill. 160, 195 N.E. 625.

■ It is of course true that while the court is granted wide judicial discretion by the act, that discretion must be exercised, as indeed it must always be, with great regard for the rights of all parties concerned. That includes the natural right of the par-

ent to the custody of his child. In re Wakefield, 365 Mo. 415, 283 S.W.2d 467; State v. Greer, Mo.App., 311 S.W.2d 49. Any restriction of the parental right must be cautiously imposed and such restriction should never be greater than that which is necessary to promote the welfare of the child. State v. Couch, Mo.App., 294 S.W. 2d 636.

It is our conclusion that the section is not unconstitutional, for it is in effect but a restatement of a jurisdiction long existing in equity. Its application and purpose are known and it is not therefore vague or uncertain and consequently not violative of the due process accorded by the constitution of the State or Federal Government.

It is ordered that the children be remanded to the custody of the respondents.

ANDERSON and RUDDY, JJ., concur.