## Loyd DAVIS et ux *v.* Ivan H. SMITH, Attorney for ARKANSAS DEPARTMENT OF SOCIAL SERVICES

78-237                                                  583 S.W. 2d 37

### Opinion delivered June 25, 1979
### (In Banc)

*Kenneth L. Schorr; Youngdahl, Larrison & Agee; Ancil M. Reed,* of *Reed & Reed;* and *Rna K. Uviller, Martin Guggenheim* and *Lydia Tugendrajch,* of New York, N.Y., for appellants.

*Breck G. Hopkins,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal arises from an order of the Probate Court of Cleburne County appointing Ivan H. Smith, attorney for Arkansas Social Services, as guardian of the persons and estates of Sharon Renea Davis, Donna Arlene Davis and Brian Junior Davis, minor children of appellants Loyd Davis and Nola Mae Beeney Davis. The order gave the guardian full right and authority to consent to adoption, without notice to, or consent of, the natural parents. The order was entered on June 1, 1978, upon petition of this attorney for Arkansas Social Services. He alleged that: the children were under the care and custody of Arkansas Social Services pursuant to an order of the Juvenile Court of Cleburne County made on December 14, 1977; they were dependent children within the meaning of Ark. Stat. Ann. §§ 45-401, 45-449, and Act 195 of the General Assembly of 1977; they had been deserted and abandoned by their parents; the parents were unfit to properly care for the children; the grounds of unfitness of the parents were desertion, abandonment and depravity; appointment of a guardian was sought because the parents were unfit to properly care for the children and would not be able to do so; and it was for the best interest of the children that all bonds be severed with the parents and the children placed for adoption in a suitable home.

One of the grounds for reversal urged by the parents is that the involuntary termination of their parental rights was in violation of the due process clauses of the Arkansas and United States Constitutions. One facet of their argument on this ground is based upon their assertion that Ark. Stat. Ann.

§ 56-128 (2) (h) (Supp. 1977) is unconstitutionally vague. Since we agree, the order of the probate court is reversed and the petition dismissed.

Before discussing the reasons for our disposition of this case, there are matters pertaining to the record and the proceedings that should be stated to avoid misunderstandings as to the effect of our holding. There was no appeal from the juvenile court order by which Arkansas Social Services was given custody of these children and that order is not under review here. The allegations of the petition for guardianship charging appellants with unfitness because of abandonment, depravity and desertion were abandoned by the petitioner just at the outset of the hearing and the petitioner elected to rely upon his allegation that appointment of a guardian with authority to consent to adoption was sought because the parents are unfit to properly care for the children and will not be able to care for them. When this election was made, petitioner's attorney stated that reliance was placed upon Ark. Stat. Ann. § 56-128 (2) (h). The probate court's order was based upon its finding that "the parents are not fit and competent to have custody and control of said children and are unable to provide a proper home for the children as set out in Ark. Stat. Ann. § 56-128 (2) (h)." In orally stating his findings, the probate judge concluded that, based upon the evidence, the parents have failed to provide a proper home for the children.

We forego any discussion of the evidence pertaining to the physical, mental and economic limitations of these parents, because we find the section on which the court's order is based to be unconstitutionally vague in that the term, "a proper home," does not provide sufficient guidelines to meet the due process requirements of the Fourteenth Amendment to the United States Constitution and Art. 2, § 8 of the Arkansas Constitution, where the termination of parental rights is involved. The probate judge clearly recognized that there was a problem connected with the statutory language of the subsection involved. He remarked that the statute was not well drafted and that it would be unconstitutionally vague, if judged by the standards applicable to a criminal statute. In examining the statute, it is important that we have in mind

the nature of the proceedings. Its ultimate effect from the perspective of appellants is the complete termination of their parental rights.

The concern of this court for the preservation of these rights has been expressed over a long period of time. In 1881, in *Verser v. Ford*, 37 Ark. 27, even though a father was denied custody of his infant daughter, we recognized the rights of parents, of good moral character, however poor and humble they might be, if able to support their child in their own style of life, not, as a cardinal principle of law and nature, to be deprived of parental privileges, except when urgently necessary to afford the child reasonable protection. Cf. *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944); *Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968). Parental rights and the integrity of the family unit have always been a concern of this state and their protection regarded as a proper function of the courts. They have been classified as essential rights, basic civil rights, and personal rights more precious than property rights. *May v. Anderson*, 345 U.S. 528, 73 S. Ct. 840, 97 L. Ed. 1221 (1953). See *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972), and other cases cited therein. They have been said to be fundamental rights. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972).

Not very long ago we recognized that parental rights are protected by the due process clauses of the Fourteenth Amendment to the United States Constitution and Art. 2, § 8 of the Constitution of Arkansas. See *Carroll v. Johnson*, 263 Ark. 280, 565 S.W. 2d 10. Even more recently we empasized the importance of parental rights in a case in which they might have been terminated. *Harper v. Caskin*, 265 Ark. 558, 580 S.W. 2d 176 (1979). Certainly there remains no lingering doubt about the facts that the rights of parents to the care, custody and upbringing of their children are the subject of constitutional protection on both due process and equal protection standards. See also, *Stanley v. Illinois*, supra; *Armstrong v. Manzo*, 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 66 L.Ed. 1070 (1925). Parental rights are not,

however, beyond limitation in the public interest. *Prince* v. *Massachusetts,* supra; *Cude* v. *State,* 237 Ark. 927, 377 S.W. 2d 816. The state's constitutional interest extends to the welfare of the child. *In re William L.,* 477 Pa. 322, 383 A. 2d 1228 (1978). Parental rights are not immune from interference by the state in its role of parens patriae. *Minor Children of F. B.* v. *Caruthers,* 323 S.W. 2d 397 (Mo.App., 1959).

From this background, we have concluded that any statute which affords a vehicle for the termination of parental rights must meet basic constitutional due process requirements. A statute cast in vague and conclusory terms will not meet those requirements. When a statute is too vague to be effective, it is void. *Snow* v. *Riggs,* 172 Ark. 835, 290 S.W. 591; *State* v. *Bryant,* 219 Ark. 313, 241 S.W. 2d 473.

The probate judge was certainly correct in his analysis of due process requirements in the criminal law field. A statute defining an offense for which one may be punished is void for vagueness under due process standards, unless it gives one of ordinary intelligence fair notice that his contemplated conduct is forbidden, so he may act accordingly. *Papachristou* v. *City of Jacksonville,* 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *Grayned* v. *City of Rockford,* 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). A criminal statute which does not furnish a sufficiently ascertainable standard of guilt does not meet constitutional due process requirements. *Herndon* v. *Lowry,* 301 U.S. 242, 57 S. Ct. 732, 81 L. Ed. 1066 (1937).

In criminal cases, placing discretion in the hands of the police without prescribing any standards governing its exercise is another instance which renders a statute void for vagueness. *Papachristou* v. *City of Jacksonville,* supra. A statute permitting a court to put one it thinks is living subhumanly in prison for failure to raise his sights would be impermissible. *Papachristou* v. *City of Jacksonville,* supra. A law which, due to vagueness, leaves basic policy matters in the criminal law field to either policemen or judges on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application, is also impermissible. *Grayned* v. *City of Rockford,* supra. A law that is so vague and standardless that it leaves judges or jurors free to decide, without any

legally fixed standards, what is prohibited and what is not in each particular case fails to meet due process requirements. *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966). See also, *Andrew Jackson, ex parte,* 45 Ark. 158.

In statutes regulating business, the leeway is greater. *Papachristou* v. *City of Jacksonville,* supra.

There was an appropriate contrast drawn between statutory language that is vague and indefinite under due process standards and that which is not in *A. B. Small Co.* v. *American Sugar Refining Co.,* 267 U.S. 233, 45 S. Ct. 295, 69 L. Ed. 589 (1925). There the pertinent language provided that it should be " 'unlawful for any person wilfully . . . to make any unjust or unreasonable charge in . . . dealing in or with any necessaries' " or to agree with another " 'to exact excessive prices for any necessaries.' " That language was held unconstitutionally vague and indefinite because the terms unjust, unreasonable and excessive, as applied to prices in the provision in question, had no commonly recognized or accepted meaning and the statute contained no provision pointing to what should be deemed a just, reasonable and not excessive price, and there was no accepted and fairly stable commercial standard which could be regarded as impliedly taken up and adopted by the statute. On the other hand, the court pointed out that a statute directed against the exaction of unjust, unreasonable and oppressive rents was not vague and indefinite because it was not silent on the standards. It recognized and named elements which would require consideration and had been construed to prescribe a standard which permitted the landlord to receive a reasonable income on his investment, valued as of the time the rent was reserved. It was pointed out that the United States Supreme Court had upheld the rent statute because real property, especially in a city, comes to have a recognized value which is relatively stable and easily ascertained and a recognized rental value, in terms of compensation commonly asked and paid for its occupancy and use. A standard which had come to be fairly well settled and understood in actual practice in the course of business had been held sufficient to meet due process requirements that a statute be sufficiently definite and intelligible. But, even in cases of statutes regulating business, the ex-

action of obedience or requiring conformity to a standard which is so vague and indefinite amounts to no rule or standard at all. *A. B. Small Co. v. American Sugar Refining Co.,* supra.

After reviewing the authorities, we have come to the conclusion that where standards for termination of parental rights are the subject of the statute involved, the application of "vagueness" tests should lie somewhere between that given criminal law statutes and that given statutes regulating business, i.e., permitting greater flexibility than where criminal law statutes are involved and less flexibility than with business-regulatory statutes. See *Minor Children of F.B. v. Caruthers,* 323 S.W. 2d 397 (Mo. App., 1959). This is because any parent should have some basic understanding of his obligations to his children, but many cannot be as alert to, and aware of, prevailing practices basic to establishment of standards as those engaging in business would likely be to settled and well understood standards and practices. Mathematical certainty in language is not to be expected in any statute. *Grayned v. City of Rockford,* supra. See also, *Robinson v. United States,* 324 U.S. 282, 65 S. Ct. 666, 89 L. Ed. 944 (1945). Flexibility and reasonable breadth, rather than meticulous specificity or great exactitude, in a statute are permissible, so long as its reach is clearly delineated in words of common understanding. *Grayned v. City of Rockford,* supra; *Minor Children of F. B. v. Caruthers,* 323 S.W. 2d 397 (Mo. App. 1959). A statute which defines boundaries sufficiently distinct for citizens, policemen, juries and appellate judges is not impermissibly vague. *Grayned v. City of Rockford,* supra. Impossible standards of specificity are not required by the constitution, even in criminal statutes, and a statute meets constitutional muster, if the language used conveys sufficient warning when measured by common understanding and practice. *Jordan v. DeGeorge,* 341 U.S. 223, 71 S. Ct. 703, 95 L. Ed. 886 (1951); *United States v. Petrillo,* 332 U.S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877 (1947). It is not necessary that all kinds of conduct falling within the reach of the statute be particularized. *City of Chicago v. Fort,* 46 Ill. 2d 12, 262 N.E. 2d 473 (1970). A statute is not to be struck down as vague only because marginal cases could be put where doubts might arise. *United States v. Harriss,* 347 U.S. 612, 74 S. Ct. 808, 98 L.

Ed. 989 (1954). The futility of anticipating and enumerating every means or method a fertile mind might devise that would come within the purview of a statute is obvious. *City of Chicago* v. *Fort,* supra; *Minor Children of F. B.* v. *Caruthers,* supra.

Among other things, proper, as an adjective, may mean:

Belonging to the natural or essential constitution; belonging characteristically to a species or individual or arising from the nature of one; peculiar; distinctive; as every animal has his proper instincts and appetites.

Befitting one's nature, qualities, etc; appropriate; suitable; right; fit; as, water is the proper element for fish; a proper dress; games proper to spring.

Fine; excellent; goodly; — often used ironically.

Belonging to itself; inherent. Cf. PROPER MOTION.

Strictly pertinent or applicable; exact; correct; as, proper words in proper places.

Conforming to the best usage ethically or socially; decorous, decent.

Webster's New International Dictionary, 2d Ed. (omitting special, obsolete, archaic and slang definitions).

Thus, several of the usual definitions of the word might be used to describe a home. If we can choose one with any assurance that it expressed the legislative intent, we should. An act of the General Assembly should be given a construction that meets the test of constitutionality, if possible to do so. *United States* v. *Harriss,* supra. If the choice of one meaning would make a statute constitutional and choice of another would render it unconstitutional, the answer would be easy. But the problem here is not so simply solved. The choice is from multiple meanings.

Generally, a meaning may be assigned to a word that is fitting to the context in which it is used. It has been said that the word "proper" in one context means "appropriate," "suitable," "right," "fit," or "correct." *Brotherhood of Railway and Steamship Clerks* v. *Railway Express Agency,* 238 F. 2d 181 (6 Cir., 1956). In another, it was said to mean "consistent with

propriety" or, alternatively, "appropriate," "suited to" and swallowed up by the word "necessary." *Phillips Sheet & Tin Plate Co.* v. *Amalgamated Ass'n. of Iron, Steel & Tin Workers,* 208 F. 335 (S.D., Ohio, 1913). It has also been said to be synonymous with "correct." *Cook* v. *Dunbar,* 66 R.I. 266, 18 A. 2d 658 (1941); *Industrial National Bank of Rhode Island* v. *Rhode Island Hospital,* 99 R.I. 289, 207 A. 2d 286 (1965).

Using any of these meanings does little to make the words, "a proper home," clearly understandable, so that it doesn't mean one thing to one judge, something else to another, and something yet different to still another. What is a proper home? A correct home? A suitable home? A fit home? An appropriate home? A home consistent with propriety? Is propriety to be determined ethically, socially, or economically? Or on the basis of morality? Or prosperity? Is the standard a maximum, a minimum, a mean or an average? Clearly, mere economic conditions of a family, standing alone, should not be the criterion for termination of parental rights. *In re Interest of Camm,* 294 So. 2d 318 (Fla., 1974), cert. den. 419 U.S. 866, 95 S. Ct. 121, 42 L. Ed. 2d 103 (1974). The fact that a home is "submarginal" and likely to result in a "cultural deprivation" is not enough, but an irremedial failure to provide a stable family relationship or to meet the child's essential and necessary physical and mental needs over an extended period of time, may be. *In re William L.,* 477 Pa. 322, 383 A. 2d 1228 (1978). We have equated "proper" with "reasonable" in another context. *Eudora Motor Co.* v. *Womack,* 195 Ark. 74, 111 S.W. 2d 530. Doing so here would not relieve us from our quandary.

Our problem is not made easier by the realization that a statute cannot be more specific than reasonably possible under the circumstances and that practical considerations make mechanical applications of specifications impossible. But we do not consider this to be a case where more specific language would be difficult to conceive, or the multiplicity of potential parental shortcomings imposes an insurmountable obstacle. See *In re William L.,* supra; *Alsager* v. *District Court of Polk County,* 406 F.S. 10 (S.D. Iowa, 1975), aff'd. on other grounds, 545 F. 2d 1137 (8 Cir., 1976).

Appellee suggests that the section of the statute in question is directed to parental inability to meet the essential needs of their children. But the statute does not say this and it is not for us to make it say something that it clearly does not. See *Snow* v. *Riggs*, 172 Ark. 835, 290 S.W. 591; *Robinson* v. *United States*, supra. After all, the conditions upon which parental rights are to be terminated are a question of policy, the resolution of which is addressed in a democracy to the policy making branch of government, the General Assembly. *In re William L.*, supra. See also, *Maher* v. *Roe*, 432 U.S. 464, 97 S. Ct. 2376, 53 L. Ed. 2d 484 (1977).

We have held that a statute exempting "small farm vehicles" from requirements of safety signals on vehicles without defining the term or providing how it can be determined whether a farm vehicle is small was too vague and uncertain to satisfy constitutional standards for criminal statutes. *State* v. *Bryant*, 219 Ark. 313, 241 S.W. 2d 473. We find the meaning of "a proper home" at least as elusive as "small farm vehicles." Although the former term is used in a non-criminal statute and the latter in a criminal law, "proper home" still would permit such a wide latitude for interpretation that its meaning would vary widely among judges, who like other human beings, can only see things through their own eyes. Another court dealing with severance of parent-child relationships in *Roe* v. *Conn*, 417 F.S. 769 (M.D. Ala., 1976), asked the critical question facing us and answered it as we must, saying:

> *** When is a home an "unfit" or "improper" place for a child? Obviously, this is a question about which men and women of ordinary intelligence would greatly disagree. Their answers would vary in large measure in relation to their differing social, ethical, and religious views. Because these terms are too subjective to denote a sufficient warning to those individuals who might be affected by their proscription, the statute is unconstitutionally vague. ***

We deem the statutory provision in question to leave the discretion vested in judges so broad that arbitrary and discriminatory parental terminations are inevitable. Cf. *Alsager*

v. *District Court of Polk County*, supra. Since we find Ark. Stat. Ann. § 56-128 (2) (h) too vague to meet due process requirements of both the state and federal constitutions, and the petition and judgment totally dependent on that provision, appellees having elected to stand on that provision only, we must not only reverse the judgment but also dismiss the petition.