## WOODSON v. LEE.

4-9967                                    254 S. W. 2d 326

Opinion delivered January 26, 1953.

*Talley & Owen* and *Dean R. Morley,* for appellant.

*Reece Caudle,* for appellee.

WARD, Justice. John Bernerd Woodson here seeks reversal of an order of the Probate Court which granted adoption of his young son, John Bernerd, Jr., to the father and mother of his divorced wife and mother of the boy. In reaching the conclusion it did the Probate Court held, necessarily, that appellant had abandoned the boy for a period of six months before the petition for adoption was filed.

The only question before us is: Did appellant, under the facts in this case, so abandon his son? The more accurate statement of the question is. Does the weight

of the evidence in this case sustain the finding of the trial court on this point?

Our judgment is that the trial court's finding is not supported by the evidence. The law under which the trial court assumed jurisdiction and proceeded in this instance is § 56-106 of *Ark. Stats.*, the pertinent part of which is set out below:

"Consent of parents or guardian.—(a) The adoption of a child shall not be permitted without the written consent verified by affidavit, of its parents or parent, if living, except as follows:

(b) The consent of a parent or parents may be dispensed with if the court, upon competent evidence, makes one of the following findings:

(1) The parent has abandoned the child for more than six (6) months next preceding the filing of the petition."

The facts are substantially as follows:

Appellant and his wife, Juanita Lee Woodson, were divorced on November 22, 1948. The divorce decree gave the custody of their son to the mother with rights of visitation to the father and approved a property settlement previously made by the parties. The property settlement provided for the wife to pay the husband $10,000, for the husband to convey to the wife his interest in certain described lots and a motor business in Russellville and in a partnership business in Morrilton, and for him to convey to her his interest in their two bank accounts and their household furniture. The settlement also provided that the mother would be responsible for the maintenance, care and upkeep of the child during his minority. In a signed statement attached to the property settlement appellee, D. W. Lee, bound himself to the fulfillment of the obligation of the mother regarding financial support of the child.

It appears that in October, 1949, after the divorce decree in November, 1948, the mother filed a petition to adopt her son but on March 31, 1950, a substituted

petition for adoption was filed by appellees, alleging appellant had abandoned his son. The period of abandonment was not mentioned. In the latter proceeding the mother entered her consent for adoption as provided by statute.

After the divorce appellant returned to his former home in Memphis where he has at all times been substantially employed. It is not disputed that he visited his son at Russellville regularly every two weeks until sometime in March, 1949. Appellant states he was forced to discontinue these visits because of the attitude of his former wife. She admits that she objected to his visits on one occasion when he appeared unshaven and poorly dressed and, as she thought, under the influence of liquor. On two other occasions she also objected over the telephone. There is in evidence a copy of a letter, dated December 11, 1948, she wrote to appellant's sister in which she stated she didn't want his father and mother to visit the boy during Christmas.

Appellant states positively that he never at any time intended to abandon his son; that he sent him Christmas presents; and that he ceased trying to continue his visits, on advice of his attorneys, in order to avoid trouble and in an effort to effect peaceable arrangements. The fact that appellant had engaged counsel to preserve his rights of visitation granted by the decree of divorce is evidenced by the introduction in evidence of a copy of a letter, dated April 12, 1949, written by his attorneys of record to the attorney representing Mrs. Woodson. In this letter, among other things, it was stated that appellant was entitled to see his son, and the addressee was asked to reply regarding the matter. This letter was answered two days later, stating advice would be given as soon as certain information was obtained. The record fails to disclose any further correspondence.

There is no other testimony on the part of appellees which throws any material light on appellant's intent to abandon his son or his acts which might indicate such intent.

The above statement of facts, weighed by the rules announced by text writers and court decisions, fails, in our opinion, to sustain the trial court's finding that appellant abandoned his son. The weight of the evidence, we think, indicates appellant did not intend to and in fact never did abandon his son.

Appellees cite as the appropriate rule an excerpt from 2 *C. J. S.* page 388, which reads:

"On the other hand, conduct of the parents indicating a settled intention to leave the child permanently at the care of others constitutes an abandonment within the meaning of the statute . . ."

We are in general accord with the rule above stated but, since we find there was no "settled intention" to abandon, it could only support the argument that appellant abandoned his child because he, perhaps, wisely provided for others to pay for his upkeep. Such interpretation is, we think, unwarranted, not only because it would penalize the father for securing the welfare of his son, but because it ignores the fact that he gave up certain property rights in the property settlement which could have been the consideration for the security obtained. Such an arrangement is not unlike a father procuring an insurance policy for the future security of a child.

Preceding the text copied above, on the same page, we also find:

"Ordinarily, abandonment by a parent, to justify in law the adoption of his child by a stranger without his consent, is conduct which evinces a settled purpose to forego all parental duties continued for a prescribed period of time when the statute so provides. Merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment . . ."

Likewise, we approve the language used in the same text at pages 383 and 384:

"While the right of the natural parents to the custody of their children is not a proprietary right in the same sense as if the child were a chattel, it has ever been

regarded, even in primitive civilization, as one of the highest of natural rights, and the state cannot interfere with this right simply to better the moral and temporal welfare of the child as against an unoffending parent.''

The views we hold here are well expressed by the language used in the California case *In Re Cordy,* 146 Pac. 532. There certain parties sought to adopt the child of Mrs. Cordy, without her consent, under an abandonment statute somewhat similar to our own. In denying the adoption the court approved, from another case, the following language:

''. . . the power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by the statute, such statute should be strictly construed; that 'the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. . . . Every intendment should have been in favor of the claim of the mother under the evidence, and if the statute was open to construction and interpretation it should be construed in support of the right of the natural parent.' '' The same decision also approved Webster's definition of ''abandonment'' as follows:

''To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake.''

We have examined the decisions presented by appellees and find nothing contrary to the views above expressed.

Reversed.