**W. O. WALTHALL et ux., Appellants,**

v.

**Harold Henry HIME, Appellee.**

**No. 5-3019.**

Supreme Court of Arkansas.

May 27, 1963.

McKay, Anderson & Crumpler, Magnolia, for appellants.

Harry B. Colay, Magnolia, for appellee.

HARRIS, Chief Justice.

This is an adoption proceeding. Harold Henry Hime, a Baptist minister, was the husband of Billie Jo Walthall Hime, and Billie Jo died on September 25, 1957, eight days after the birth of the couple's third child, Sarah Margaret Hime. W. O. Walthall and Lula Walthall, his wife, parents of Billie Jo, and appellants herein, took the baby home from the hospital, along with the two older minor sons. Mr. Hime also lived in the Walthall home while teaching at Bradley; after about six weeks,

he became pastor at Bradley, and moved from appellants' home. Hime, according to the testimony, at first, returned to the Walthall home on Friday nights, and subsequently on Saturdays, at which times he would see the children and get clean clothes. In September, 1958, appellee remarried, and took the boys with him to the parsonage at Bradley. Sarah Margaret remained with her grandparents. Mr. Hime, his wife, and sons, remained in the parsonage until January, 1960. During that period, the grandparents visited in his home on several occasions, at which time they took Sarah Margaret with them, and on several occasions returned the boys back to their home for a visit. Mrs. Walthall testified that appellee never did ask for Sarah to spend the night at his home, nor did he take Sarah out when visiting appellants, or ask to do so. A girl baby was born to Mr. Hime and his second wife in September, 1959. Thereafter, appellee and family left Bradley and moved to Fort Worth. Sarah Margaret remained in the home of the grandparents. According to Mrs. Walthall, the Himes, at first, came back for a visit during the summer, and the two families always had Christmas dinner together. She testified that Sarah never did visit with her father, and that no request was made for such a visit. Early in 1961, appellee commenced sending $30.00 per month to the Walthalls for the benefit of the child, the money being a portion of Social Security money (or some fund from the Government) which Hime received in behalf of the children. In May, 1962, the Walthalls received a letter from appellee to the effect that he desired to take his daughter home with him to live. Mr. Walthall directed a letter to Hime, stating that appellants intended to keep Sarah Margaret. In June, appellee filed an action in Habeas Corpus to obtain custody of the child. On the day that this matter was to be heard, appellants filed a petition in Probate Court, seeking to adopt Sarah Margaret, alleging that Hime had abandoned the child for more than six months immediately prior to the

filing of their petition for adoption. A motion was also filed by them to continue the Habeas Corpus hearing until after the adoption petition was heard. The motion was granted,[1] and subsequently the petition for adoption was heard by the Probate Court. At the conclusion of the hearing, the judge of that court entered a lengthy and studious opinion, wherein he found that the petition for adoption should be denied. In accordance with this finding, an order was entered dismissing appellant's petition, and denying the adoption. From such order, comes this appeal.

Section 56–106, Ark.Stats., dealing with adoption, provides as follows:

"(a) The adoption of a child shall not be permitted without the written consent verified by affidavit, of its parents or parent, if living, except as follows:

"(b) The consent of a parent or parents may be dispensed with if the court, upon competent evidence, makes one of the following findings:

"(I) The parent has abandoned the child for more than six (6) months next preceding the filing of the petition.

"(II) The parent cannot be found.

"(III) The parent is insane or otherwise incapacitated from giving consent.

"(IV) A guardian of the child has been appointed by an order of the Probate or Juvenile Court giving the guardian authority to consent to adoption without notice to or consent of the child's natural parents. In this case, the written verified consent of the guardian shall be sufficient.

"(V) For five (5) years next preceding the filing of the petition for adoption, the child has resided in this State in the sole custody of one of its parents and the other parent has not, during that period contributed to its support, care or maintenance, then the appearance and consent of such other parent, whether or not his or her residence is known, shall not be necessary, and the court may order the adoption upon the consent of the parent who has had the custody, support, care and maintenance of the child.

"(c) In case of illegitimacy, the consent of the mother shall suffice except where paternity has been established by judgment or order of a court of competent jurisdiction.

"(d) The minority of a parent shall not bar or in any way vitiate his consent to an adoption."

Appellants rely upon Provision (I), and in proceeding under this theory, endeavored to establish that appellee had "given" the child to its grandparents. Four ladies testified that during the first Mrs. Hime's last illness, appellee had told them that if his wife died, he would give the child to Mrs. Walthall; however, on cross-examination, one of the witnesses (Mrs. Fritch) stated that he was "letting them keep Sarah." Two of the other ladies, who testified that Hime "gave" the child to appellants, added that he did not indicate he was abandoning Sarah Margaret, and the fourth testified that he seemed rather perturbed at the time over the critical condition of his wife. Mrs. Walthall stated that after her daughter's death, appellee told her, "Mrs. Walthall, Sarah is yours and Mr. Walthall's." She testified that she didn't want the children separated, and stated that subsequently (when Hime was preparing to take the boys to live with him in Bradley) told him, "Bozo,[2] if you don't take Sarah now, don't ever come back for her." The testimony reflected that on one occasion, Hime attended a homecoming celebration at Southern State College, but did not go by the Walthall home to visit with Sarah. Mrs. Wal-

1. In his opinion, the trial judge stated, "It was stipulated that in the event petitioners were unsuccessful in the adoption matter, they would not further contest the action in Chancery Court."

2. This was appellee's nick-name.

thall testified that Hime always sent Christmas and birthday presents to his daughter, and had, for seventeen months prior to the filing of the adoption petition, sent the $30.-00 heretofore referred to. When asked if he had ever given any indication of deserting and abandoning the child, she replied, "Why, no, I don't suppose you would call it that. He did walk away and leave her when I asked him if he didn't take her then to not ever come back for her. That is the nearest I would call abandon. I don't suppose he called it that and I didn't."

Mr. Hime is a social case worker for Buckner Baptist Benevolences, connected with Buckner Baptist Children's Home, near Fort Worth. He testified that he did not recall ever telling anyone that he was renouncing all rights to Sarah, and he readily admitted that he felt a serious mistake had been made by leaving the child with the grandparents for so long a period of time. He stated that one reason for leaving Sarah Margaret was to help his mother-in-law, who was extremely upset over the death of her daughter, and he testified that he had not often visited in the Walthall home for two reasons—because of his schooling,[3] pastorates, and work at the orphanage, and further, because he felt that such visits caused emotional disturbances in the family. Appellee stated that he felt his visits had become progressively less welcome[4] but he had left the child with appellants because he did not want to hurt Mrs. Walthall; that finally, however, he felt that the step must be taken, and he directed the letter to appellants, expressing his desire to rear his daughter with the other members of his family. He testified that he received Social Security for the three children (around $60.00 per month for Sarah); that he had been sending $30.00 to the Walthalls, had purchased a participating life insurance

policy for Sarah which would mature on her eighteenth birthday, and had established a small bank account for her.

The present Mrs. Hime testified that she wanted Sarah in the home and would do all possible to make a good mother for her.

The evidence establishes that all parties are of good moral character, and from that standpoint, entirely proper persons to rear the little girl.

In reaching our conclusion, it is not necessary to discuss the question of whether a child can be "given away." Suffice it to say that we think the proof falls far short of establishing that appellee abandoned Sarah Margaret. This court, in Woodson v. Lee, 221 Ark. 517, 254 S.W.2d 326, quoted a California case[5] which approved Webster's definition of "abandonment" as follows:

"To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake."

Certainly, the proof does not reflect that Hime deserted, forsook entirely, renounced utterly, or relinquished all connection with, or concern in, his daughter. Whether, at the beginning, he intended to relinquish any rights or interest in the person of his daughter, with the intent of never again resuming the relationship, is very much debatable under the evidence in this case, but the statute requires that he shall have *abandoned the child for more than six (6) months next preceding the filing of the petition.* As heretofore stated, money had been sent for

---

3. Mr. Hime is working on his Master of Divinity degree.

4. According to his testimony, every letter written by the Walthalls to his household since the death of Billie Jo had been addressed to the two boys, and he stated that he did not recall ever receiving a personal invitation for a visit to the Walthall home unless it was to bring the children.

5. In re Cordy, 169 Cal. 150, 146 P. 532.

the child's benefit for seventeen months prior to the filing of the petition, gifts had consistently been given on commemorative days, and, in fact, Hime had already filed his petition for a Writ of Habeas Corpus with the intention of obtaining the custody and control of his daughter before appellants ever filed their petition for adoption.

Finding no abandonment of Sarah Margaret by her father, appellee herein, it follows that the order of the Probate Court should be, and hereby is, affirmed.