Eddie Linn SWAFFAR, Jr., and Billy Gracen Swaffar *v.* W.C. SWAFFAR, et al.

91-208 827 S.W.2d 140

Supreme Court of Arkansas
Opinion delivered March 30, 1992

*J.R. Nash*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *M. Stephen Bingham*, for appellee.

ROBERT L. BROWN, Justice. The appellants, Eddie Linn Swaffar, Jr., and Billy Gracen Swaffar, appeal from an order of the probate court finding that Billy Swaffar, who was also known as Billy McKim, was not a legally adopted son of the decedent, Eddie Linn Swaffar, Sr., and, therefore, not a pretermitted heir under the decedent's will. The issue on appeal is whether Billy

Swaffar was legally adopted in 1977 under Act 369 of 1947, which was codified at that time as Ark. Stat. Ann. § 56-101, *et seq.* (Repl. 1971). We agree with the probate court that he was not legally adopted, and we affirm.

The appellant was born on October 1, 1961, and named Billy Gracen McKim. His mother, Peggy McKim, married the decedent, Eddie Linn Swaffar, Sr., on March 23, 1964, and they lived in Faulkner County. Later, appellant Eddie Linn Swaffar, Jr., was born of this union. The marriage lasted fourteen years and was punctuated by many separations.

On March 1, 1977, the decedent and his wife, Peggy, filed a petition in Faulkner County Probate Court for the adoption of "Billy Gracen McKim, Jr.," by the decedent. On the same date, a hearing was held at which time the decedent expressed his desire to adopt "Billy McKim." the appellant was not present. The court inquired, "Do you have the consent of this young man? He's sixteen."[1] The decedent's attorney replied, "Eddie is the only father he's ever known. He's agreeable." The judge then requested an order, which the decedent's attorney prepared. The interlocutory order of adoption was entered on March 8, 1977.

Before the six-month period expired, Eddie Linn Swaffar, Sr., and his wife separated, and she moved to Saline County with Billy Swaffar. On August 1, 1977, Peggy Swaffar filed a complaint for divorce in Saline County Chancery Court in which she alleged that only one minor child, Eddie Linn Swaffar, Jr., had been born of the marriage. No mention was made of Billy Swaffar in the complaint. The divorce suit culminated, after a three-year separation, in a divorce decree that awarded Peggy Swaffar forty dollars a week for the support of the minor child, Eddie Linn Swaffar, Jr. Again, no mention was made of Billy Swaffar.

On February 17, 1989, the decedent executed his will, which placed all assets of his estate in a trust for the benefit of Eddie Linn Swaffar, Jr. and Brandon Heath Swaffar, who had been fathered by the decedent and born out of wedlock. No provision was made for Billy Swaffar, who was not named in the will. W.C. Swaffar was named the executor.

---

[1] Actually, Billy McKim was fifteen years old at the time.

Eddie Linn Swaffar, Sr., died on April 8, 1989. On April 12, 1989, appellee W.C. Swaffar, the named executor, filed a petition for probate and appointment of personal representative in the Faulkner County Probate Court. When he learned that he was not mentioned in the will, appellant Billy Swaffar filed petitions to take against the will on grounds that he was pretermitted and, in addition, to contest the will due to undue influence practiced against the decedent by his brother, W.C. Swaffar.

On November 27, 1990, the probate court began a hearing on the petitions, at which time Billy Swaffar made the following statements:

> No, there ain't a handful of people that know me as McKim; just legal documents or, you know, places of employment where I — you know, I though I was supposed to use McKim. I never knew that I was legally adopted.
>
> . . . .
>
> . . .You know, I knew that the process was goin' through when we left that last time, but, you know, nobody ever told me that it legally went through or, you know, you're legally a Swaffar or nothin' like that, or I'd used the name Swaffar, I'd'a never changed it. When I got married, my wife thought that she was marrying Billy Swaffar. . . . Guarantee it.

When asked how he explained to his wife the name "McKim" on their marriage license, the appellant responded:

> Well, I just, you know, told her — I said, "You know, I've never been legally adopted, that I know of, and to make things legal, I have to change my name back to McKim."

The appellant's attorney asked him whether he had signed anything at the time of the adoption proceeding, and he replied:

> Well, I don't really know what I signed. I signed a form, one day, before I went to school, on the kitchen table, and they was talking about, you know, after we get — after you sign this, then we'll go in front of the Judge, and then you will be legally Ed's son.

Acknowledging that he never questioned anyone any further

about the document, the appellant explained: "No, I didn't really assume that I was adopted." Billy Swaffar also confirmed that his mother was under the impression that he had not been legally adopted by the decedent. He then engaged in this colloquy:

Q. When was the first time you ever thought about the possibility that you were legally adopted?

A. After I heard the will. I knew something had to be done, so I went to backtracking.

The appellant testified that he never had asked an attorney to change his name legally to "Swaffar." During his school years in the Conway school district before the divorce, he went by Billy Swaffar. He had two Social Security cards issued in the Swaffar name and the McKim name. The record also reveals that he was enrolled for the 1978-79 school year in the Bryant school district under the name of "Billy McKim." As part of discovery and at trial, it was further revealed that his joint checking account with his wife bears the name McKim. He entered vocational-technical school under "Billy McKim," and his GED certificate and marriage license show him as "Billy McKim." He is listed in the telephone directory as "Billy McKim," and his wife and daughter go by the name McKim.

The probate court found in its memorandum opinion dated December 14, 1990, that Billy Swaffar "did not change his birth certificate or use the name of Swaffar until after the decedent's death and it began to appear that it would be profitable to do so." The birth certificate is dated September 26, 1989. The court further found standing on the executor's part to defend against Billy Swaffar's petitions on grounds that he was not the lawfully adopted child of the decedent.

■ The appellants first argue on appeal that the appellee, as executor, had not standing to challenge Billy Swaffar's adoption. The appellants, however, are misguided on this issue. The appellee objected to Swaffar's status as a pretermitted heir on grounds that he was not legally adopted. In doing so, the executor was operating well within his authority to contest the pretermitted status of a petitioner who did not qualify. Indeed, he was obligated to do so as the representative of those provided for in the will. *See Clifton v. Guest*, 216 Ark. 352, 226 S.W.2d 61

(1950). In short, the appellee had standing to challenge Billy Swaffar's adoptive status in his capacity as executor, which was a challenge he was required to make to protect the decedent's distributees mentioned in his will.

The crux of this case is whether the appellant, Billy Swaffar, was legally adopted in the proceedings that took place in March 1977. This court has previously described the powers and jurisdiction of the probate courts that emanated from statutory law:

> The probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers (as) are conferred by the constitution or by statute, or necessarily incident to the exercise of the jurisdiction and powers specifically granted. *Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810. There is no mention of adoption, child custody or visitation rights in the Arkansas Constitution. Jurisdiction of adoption proceedings has been vested in the probate court by statute. Adoption proceedings were unknown to the common law, so they are governed entirely by statute.

*Poe* v. *Case*, 263 Ark. 488, 565 S.W.2d 612, 613 (1978). Because they are in derogation of common law, adoption statutes are strictly construed and applied. *Norris* v. *Dunn*, 184 Ark. 511, 43 S.W.2d 77 (1931); *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980).

The parties agreed at oral argument that the governing statute in effect when the order for temporary adoption was entered was section 8 of Act 369 of 1947, then codified as Ark. Stat. Ann. § 56-107 (Repl. 1971). Section 8 read at that time as follows:

> In no case need a child be named as a defendant, nor a guardian ad litem appointed to defend him; but if such child is fourteen [14] years old or more when the petition is filed, the adoption shall not be made without his verified consent in writing. The consent of children less than fourteen [14] years of age shall not be necessary.

Billy Swaffar was fifteen at the time of the petition and

his verified consent in writing was required under Act 369. There is no proof of record that this consent was ever given. Certainly it was not filed with the petition. And no reference was made to a "verified consent" by the fifteen year old to be adopted in the probate court's interlocutory order. All that suggests even the remote possibility of such a document is the appellant's testimony that one day he signed some form he could not identify at the kitchen table before he went to school. That hardly qualifies as a verified consent of record.

The probate court found in its Memorandum Opinion that the file did not contain a written consent from from the appellant and that the adoption statutes must be strictly construed.[2] Though the appellants urge that section 9 of Act 369 of 1947, then codified as Ark. Stat. Ann. § 56-108(b) (Repl. 1971), permits the probate court to dispense with consent, that section only specifies that the court may dispense with consent "as provided in sections 8 and 9." Section 8 authorizes it *only* when the child is less than age fourteen.

 The issue then becomes what was the effect of Billy Swaffar's failure to consent. We have held that the jurisdiction of the probate court to order an adoption depends on strict statutory compliance, including the consent of the person legally authorized to represent the minor. *Norris* v. *Dunn, supra.* Failure to comply strictly with the Adoption Code denies the probate court jurisdiction. *Id; see also, Minetree* v. *Minetree,* 181 Ark. 111, 26 S.W.2d 101 (1930); *Morris* v. *Dooley,* 59 Ark. 483, 28 S.W. 30, 430 (1894); *Roberts* v. *Swim,* 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). We have further held that unless all jurisdictional requirements appear in the record, the resulting decree will be void upon collateral attack. *Hughes* v. *Cain,* 210 Ark. 476, 196 S.W.2d 758 (1946).

The absence of Billy Swaffar's consent is not a mere technicality but rather it goes to the heart of the adoption process in that public policy clearly favors the consent of the person to be

---

[2] The probate court erroneously found that Act 735 of 1977, now codified as Ark. Code Ann. § 9-9-206(5) (1987), was controlling. Act 735, however, was not enacted until sixteen days after the order for temporary adoption was entered. The parties agree that Act 369 of 1947 controls the consent question.

adopted. Surely, Billy Swaffar at age fifteen had a legitimate say in whether he wished to be adopted by the decedent. Yet, his consent in writing was not obtained. Nor was he present at the hearing on the adoption petition on March 1, 1977, to voice his opinion. And no mention was made of his consent in the interlocutory order. Can the probate court decide his fate under such circumstances? We do not think so.

We are aware of the argument that any decree of a probate court regarding adoptions should be presumed valid and in compliance with all statutory requirements. The most impassioned advocate of this petition was Justice Frank Smith in his dissent in *Minetree* v. *Minetree, supra*, But, again, the consent of the one to be adopted, as required by statute, must not be presumed. There is no reference in the order to Billy Swaffar's consent, and no written evidence of record that it was obtained. Because of this, jurisdiction in the probate court was lacking, and the adoption order was void.

Affirmed.