Scott TATE and Mary Ennis Tate *v.* Jo BENNETT

99-1233                                            20 S.W.3d 370

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*Thomas L. Hilburn,* Judge;

*Philip G. Smith, P.A.,* by: *Philip G. Smith,* for appellant.

*Lyons, Emerson & Cone, P.L.C.,* by: *Scott Emerson,* for appellee.

ANNABELLE CLINTON IMBER, Justice. The natural father and stepmother of two minors appeal the Randolph

County Chancery Court's decision to grant the minors' maternal grandmother visitation rights. On appeal, appellants Scott and Mary Ennis Tate contend that the action by appellee Jo Bennett seeking visitation rights under Ark. Code Ann. § 9-9-215(a)(1) (Repl. 1998) was barred by the one-year statute of limitations in Ark. Code Ann. § 9-9-216(b) (Repl. 1998). We agree and reverse and dismiss.

Scott and Cheryle Tate were a married couple with two children, Savanah and Jay Tate. On January 4, 1993, Cheryle Tate died in an automobile accident and was survived by her husband and two minor children. On May 14, 1994, Scott Tate married Mary Ennis Tate. Subsequently, Mary began proceedings to adopt Scott's two children. She filed a petition for adoption on November 22, 1994, and a hearing was held in the Randolph County Probate Court on January 18, 1995. On January 23, 1995, the probate court entered an interlocutory decree of adoption, ordering that Savanah and Jay be adopted by Mary. The final adoption decree was filed on July 3, 1995.

More than two years later, on September 30, 1997, Jo Bennett, the maternal grandmother of Savanah and Jay Tate, filed a complaint in Randolph County Chancery Court seeking custody of the children or, in the alternative, visitation rights. It is undisputed that Mrs. Bennett never received official legal notice of the earlier adoption proceedings. In the complaint, Mrs. Bennett alleged that the children had been physically and mentally abused by the Tates, which may have led to psychiatric treatment for Savanah. The complaint further stated that the children were living in an unstable environment and that Savanah was in danger.[1] Following a hearing on March 15, 1999, the trial court entered an order, finding that Mrs. Bennett had received no legal notification of the earlier adoption proceedings as required under Ark. Code Ann. § 9-9-212(g), "and her visitation rights therefore shall not be terminated." The trial court's order also set out specific dates and times for the children to visit their grandmother, Mrs. Bennett.[2] From that

---

[1] The record reflects that Mrs. Bennett had frequent contact with Savanah between April 1996 and July 1997 when Savanah was living in Alabama with her natural mother's sister, Jennifer Taylor.

[2] The supplemental record reflects that the Juvenile Division of Randolph County Chancery Court transferred legal custody of Savanah to Mrs. Bennett on June 28, 1999.

March 23, 1999 order the Tates bring this appeal.

The Tates argue that the trial court erred in awarding Mrs. Bennett visitation rights. Specifically, they argue that the provisions for grandparent visitation contained in Ark. Code Ann. 9-9-215(a)(1) (Repl. 1998) are not applicable in the present case for three reasons. With regard to grandparent visitation, section 9-9-215(a)(1) states in relevant part:

> A final decree of adoption ... [has] the following effect as to matters within the jurisdiction or before a court of this state: ... [T]o terminate all legal relationships between the adopted individual and his natural relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes. ... However, in cases where a natural or adoptive parent dies before a petition for adoption has been filed by a step-parent of the minor to be adopted the Court may grant visitation rights to the parents of the deceased natural or adoptive parent of the child if such parents of the deceased natural or adoptive parent had a close relationship with the child prior to the filing of a petition for step-parent adoption, and if such visitation rights are in the best interest of the child.

Ark. Code Ann. § 9-9-215(a)(1) (Repl. 1998).

■■ For one of their three arguments, the Tates contend that Mrs. Bennett is not entitled to visitation under section 9-9-215(a)(1) because she was barred from filing her custody/visitation action by the one-year statute of limitations found in section 9-9-216(b), which states in relevant part:

> Subject to the disposition of an appeal, upon the expiration of one (1) year after an adoption decree is issued, the decree cannot be questioned by any person including the petitioner, in any manner, upon any ground, including ... failure to give any required notice[.]

Ark. Code Ann. § 9-9-216(b) (Repl. 1998). The Tates assert that Mrs. Bennett's action for custody/visitation, which was filed more than one year after issuance of the adoption decree, questions the adoption decree. Mrs. Bennett, on the other hand, asserts that section 9-9-216(b) is not applicable because "[n]either the adoption, nor the decree itself was questioned in this hearing." We disagree. This court has consistently held that adoption statutes are to be strictly construed and applied. *See, e.g., Dougan v. Gray,* 318

Ark. 6, 884 S.W.2d 239 (1994); *Swaffar v. Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992). The language of section 9-9-216(b) is broad and reaches "any manner" of attack on the adoption decree based upon "any ground." Here, Mrs. Bennett was clearly challenging the effect of the adoption decree by claiming rights under section 9-9-215 of the Revised Uniform Adoption Act. Because she did not file her complaint seeking visitation rights within one year of the decree's issuance, she is now barred from doing so pursuant to section 9-9-216(b).

■■ However, the trial court found that Mrs. Bennett did not receive legal notification of the adoption proceedings as required by Ark. Code Ann. § 9-9-212(g) (Repl. 1993). Although section 9-9-216(b) expressly provides that the one-year statute of limitations applies to challenges based on a failure to give the required notice, we have held that it is a denial of due process to apply the one-year statute of limitations to the natural father of the adopted child if the father was not given notice of the adoption proceedings. *McKinney v. Ivey*, 287 Ark. 300, 698 S.W.2d 506 (1985). There, the due process violation arose because an unwed father who demonstrates a full commitment to the responsibilities of parenthood acquires substantial protection under the due process clause. *Lehr v. Robertson*, 463 U.S. 248 (1983). Here, no similar due process violation would arise because the Revised Uniform Adoption Act in effect at the time of the adoption proceedings did not provide for grandparent visitation rights. Ark. Code Ann. 9-9-215 (Repl. 1993). In *Cox v. Stayton*, 273 Ark. 298, 619 S.W.2d 617 (1981), this court said: "any rights existing in grandparents must be derived from statutes...." *Id.* at 304, 619 S.W.2d at 620. Grandparent visitation rights were not added to the adoption statutes until 1995 when the General Assembly enacted Act 889 of 1995, which became effective on July 28, 1995.[3] The notice provisions of sections 9-9-212(a) and (g) required that notice be provided to Mrs. Bennett twenty days before the date of the hearing on the adoption

---

[3] When Act 889 was approved on April 4, 1995, it did not contain an emergency clause or a specified effective date. Pursuant to Amendment 7 of the Arkansas Constitution, acts of the General Assembly that do not contain an emergency clause or a specified effective date become effective ninety days after adjournment of the legislative session at which they were enacted. *Priest v. Polk*, 332 Ark. 673, 912 S.W.2d 902 (1995); *State v. Ziegenbein*, 282 Ark. 162, 666 S.W.2d 698 (1984). The 1995 regular session of the General Assembly adjourned on April 28, 1995, and Act 889 of 1995 became effective on July 28, 1995. Op. Att'y Gen. No. 95-119.

petition. The hearing on the adoption petition occurred on January 18, 1995. Thus, at the time that notice to Mrs. Bennett was required, she had no visitation rights subject to protection by the due process clause.[4] Accordingly, we hold that a due process violation did not result from the lack of notice, and Mrs. Bennett's action was barred by the one-year statute of limitations in section 9-9-216(b). The trial court erred in ruling otherwise.

In light of our holding that this action is barred by Ark. Code Ann. § 9-9-216(b), we need not address the Tates' other arguments for reversal.

Reversed and dismissed.

---

[4] Mrs. Bennett might have been able to file for visitation rights under Act 889 of 1995 before the one-year statute of limitations expired. Nonetheless, the statutory notice provisions did not require that notice be given to Mrs. Bennett at any time other than at least twenty days prior to the January 18, 1995 hearing date. Ark. Code Ann. § 9-9-212(a) and (g).