William L. STROUD  v.  Delane CAGLE
and William Cagle

CA 03-1068                                           189 S.W.3d 76

Court of Appeals of Arkansas
Division III and IV
Opinion delivered June 23, 2004

*Stanley D. Christopher*, for appellant.

*Baxter, Jensen, Young, & Houston*, by: *Ray Baxter*, for appellee.

WENDELL L. GRIFFEN, Judge. William Stroud appeals from the trial court's order finding that his consent to the adoption of his son was not necessary because Stroud exceeded the period of time allowed by law in which to either support or to have substantial contact with his child[1]. Appellant alleges that the trial court erred in ruling that the requirements set forth in Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) were not applicable to this case because the effective date of the statute was after the date of the parties' divorce decree. We hold that the statute was not effective on the date that appellant's child support order was entered and the statute is not applicable to this case. Thus, we affirm.

Appellant was the natural father of the minor that is the subject of this dispute, B.S., born on January 22, 1998. At the time of the minor's birth, appellant was married to the child's natural

---

[1] This is a subsequent appeal from *Stroud v. Cagle*, 2003 WL 1901124 (Ark. App. April 16, 2003) CA02-1215, which the court of appeals dismissed because the order from which the appeal was taken was not a final order. The final hearing was held on May 30, 2003. The final order was filed on June 4, 2003.

mother Melissa Stroud. Melissa and appellant were divorced by a decree of the Saline County Chancery Court on May 3, 2001. Melissa was given custody of the child, and appellant was ordered to pay child support.

After the parties were divorced, appellant saw his child for the last time on either February 14 or February 15, 2001. According to Melissa Stroud, he never made any effort to see the child after that date. Appellee Delane Cagle, Melissa's mother and the child's maternal grandmother, filed a petition for adoption on May 14, 2002, because appellant's biological son requires speech and occupational therapy and does not have insurance coverage. Appellant was served with notice of the adoption papers on May 15, 2002. On June 28, 2002, appellant paid $4,000 in child support. This was the first time he paid any support for the child.

On July 23, 2002, the trial court found as a matter of law that appellant's consent to the adoption was unnecessary, and proceeded with the adoption hearing without his consent. Appellant appealed this order to the court of appeals, but we dismissed the appeal because the order from which appellant appealed was not final. The final order was filed on June 4, 2003. The final order of adoption awarded appellees legal custody and rights for all legal purposes to appellant's biological son.

■■ We review equity cases *de novo* on the record, but we do not reverse unless we determine that the trial court's findings were clearly erroneous. *Oliver v. Oliver*, 70 Ark. App. 403, 19 S.W.3d 630 (2000). Findings of fact shall not be set aside unless clearly erroneous. *Id.* We defer to the trial court's superior position to determine the credibility of the witnesses. *Id.* A trial court's interpretation of a statute is reviewed *de novo*. It is for the appellate court to decide what a statute means. *Nationsbank v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001). Where the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999).

Appellant's only point on appeal is that the trial court erred in ruling that the requirements set forth in Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) were not applicable to this case because the effective date of the statute occurred after the date of the parties' divorce decree. Ark. Code Ann § 9-9-220(c) (Repl. 1999) provided that the relationship of parent and child may be terminated by court order for abandonment. Ark. Code Ann.

§ 9-9-220(c)(1)(A)-(C) (Repl. 2002) added the following language found in subsections (c)(1)(A)-(C):

> (A) A child support order shall provide notice to the non-custodial parent that failure to pay child support or to visit the child for at least one (1) year shall provide the custodial parent with the right to initiate proceedings to terminate the parental rights of the non-custodial parent.
>
> (B) If the notification clause required by subdivision (c)(1)(A) is not in the child support order, the custodial parent, prior to termination of parental rights, shall notify the non-custodial parent that he or she intends to petition the court to terminate parental rights.
>
> (C)(1) The non-custodial parent shall have three (3) months from the filing of the petition to pay a substantial amount of past due payments owed and to establish a relationship with his or her child or children.
>
> (2) Once the requirements under subdivision (c)(1)(C)(1) are met, the custodial parent shall not be permitted to proceed with the adoption nor the termination of parental rights of the non-custodial parent.
>
> (3) The court may terminate parental rights of the non-custodial parent upon a showing that:
>
> (I) child support payments have not been made for one (1) year or the non-custodial parent has not visited the child in the preceding year and the non-custodial parent has not fulfilled the requirements of subdivision (c)(1)(C)(1); and
>
> (ii) It would be in the best interest of the child to terminate the parental relationship.

The trial court ruled that this statute did not apply to appellant's case because of the date that the divorce decree was entered. More specifically, the child-support order was a part of the May 3, 2001 divorce decree. The statute did not take effect until after that date. Thus, the trial court reasoned that the statute did not apply. We agree with the trial court.

In order to determine whether the statute applies to this case, we must ascertain the date the statute went into effect. Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) was origi-

nally Act 1779 of 2001. Pursuant to Amendment 7 of the Arkansas Constitution, Acts of the General Assembly that do not contain an emergency clause or a specified effective date become effective on the ninety-first day after the legislature adjourns. *Tate v. Bennett,* 341 Ark. 829, 20 S.W.3d 370, 20 S.W.3d 370 (2000). Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) does not have an emergency clause or a specified effective date. Act 1770 was approved on April 18, 2001, so it became effective after August 13, 2001. This was subsequent to the filing of appellant's divorce decree.

Appellant argues that the statute should govern because it was in effect at the time of the filing of the May 14, 2002 Petition for Adoption and the statute does not state whether it should be applied retroactively or prospectively. Absent notice in the child-support order, the statute provided that the non-custodial parent would have three months from the filing of the petition to pay a substantial amount of the past due child-support payments and to establish a relationship with the child. The date on which the child-support order was filed governs whether Ark. Code Ann. § 9-9-220 is applicable. In this case, the order for child support was included in the original divorce decree. Therefore, the date of the divorce decree governs.

The legislature intended for those non-custodial parents whose child support orders were entered after August 13, 2001, to be affected by Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002). Our law is clear that absent language in the legislative act to the contrary, statutes affecting substantive rights are to be given only prospective application. *Dover v. Barton,* 337 Ark. 186, 987 S.W.2d 705 (1999). Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) was meant to apply prospectively from August 13, 2001, not retroactively to May 3, 2001, the date the divorce decree was entered.

The trial court's ruling was not clearly erroneous. Ark. Code Ann. § 9-9-220(c)(1)(A)-(C) (Repl. 2002) was not applicable to appellant's case. Thus, we affirm.

Affirmed.

PITTMAN, NEAL, BAKER and ROAF, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. This is one of those rare cases where not a single fact is at issue and every

step we are required to take is guided by black-letter law. The sole issue in this case is whether the controlling authority is the version of Arkansas Code Annotated section 9-9-220 (Repl. 2002), that was on the books at the time that an adoption petition was filed, answered, tried, and granted. The well-settled rules of statutory interpretation compel me to believe that it was.

Arkansas Code Annotated section 9-9-220 provides in pertinent part:

(c) In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued under this subchapter on any ground provided by other law for termination of the relationship, or on the following grounds:

(1) Abandonment;

(A) A child support order shall provide notice to the non-custodial parent that failure to pay child support or to visit the child for at least one (1) year shall provide the custodial parent with the right to initiate proceedings to terminate the parental rights of the non-custodial parent.

(B) If the notification clause required by subdivision (c)(1)(A) is not in the child support order, the custodial parent, prior to termination of parental rights, shall notify the non-custodial parent that he or she intends to petition the court to terminate parental rights.

(C)(1) The non-custodial parent shall have three (3) months from the filing of the petition to pay a substantial amount of past due payments owed and to establish a relationship with his or her child or children.

(2) Once the requirements under subdivision (c)(1)(C)(1) are met, the custodial parent shall not be permitted to proceed with the adoption nor the termination of parental rights of the non-custodial parent.

(3) The court may terminate parental rights of the non-custodial parent upon a showing that:

(I) Child support payments have not been made for one (1) year or the non-custodial parent has not visited the child in the

preceding year and the non-custodial parent has not fulfilled the requirements of subdivision (c)(1)(C)(1); and

     (ii) It would be in the best interest of the child to terminate the parental relationship.

It is undisputed that the child-support order contained within the natural parents' May 3, 2001, divorce decree did not contain the notification clause mandated in the same subparagraph. This fact is not remarkable because the version of Arkansas Code Annotated section 9-9-220 (Repl. 1999) that was in effect at the time did not require it.

     The appellant William Stroud argued below, and again on appeal, that because his child support order did not have the notification clause, he was entitled to the protections of section 9-9-220(c)(1)(A)-(C). I agree. I can subscribe to no other conclusion because this argument rests soundly upon the rules of construction that we are bound to follow. It is so well settled as to be axiomatic that adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents. *See, e.g., Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992); *Swaffar v. Swaffar*, 309 Ark. 73,827 S.W.2d 140(1992); *In re Adoption of Parsons*, 302 Ark. 407, 791 S.W.2d 681 (1990); *Bush v. Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984); *Harper v. Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979); *Poe v. Case*, 263 Ark. 488, 490, 565 S.W.2d 612, 613 (1978); *Woodson v. Gee*, 221 Ark. 517, 254 S.W.2d 326 (1953); *Norris v. Dunn*, 184 Ark. 511, 43 S.W.2d 77 (1931); *Minton v. Arkansas Dep't of Human Servs.*, 72 Ark. App. 290, 34 S.W.3d 776 (2000); *Ried v. Frazee*; 61 Ark. App. 216; 966 S.W.2d 272 (1998); *Roberts v. Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). The supreme court stated in *In The Matter of the Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986):

     [T]he power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by the statute, such statute should be strictly construed; that 'the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. . . . Every intendment should have been [in] favor of the claim of the mother

under the evidence, and if the statute was open to construction and interpretation it should be construed in support of the right of the natural parent.

In this case, two legitimate interpretations are possible regarding whether the notice and opportunity to cure provisions contained within sub-paragraphs 9-9-220(c)(1)(B) and section 9-9-220(c)(1)(C)(1) apply. One interpretation preserves the rights of a natural parent; the other interpretation summarily cuts them off. I cannot agree that the majority's choice comports with clear and unambiguous precedent from our supreme court.

I am mindful of the fact that the legislature in 2003 did insert a provision into the statute which states: "(D) The provisions of subdivisions (c)(1)(A)-(C) of this section apply only to child support orders entered after August 13, 2001." However, it is of no moment. It is black letter law that generally courts may not, by construction, insert words or phrases in a statute. 73 AM. JUR. 2d *Statutes* § 123 (2001). In *Snowden v. Thompson*, 106 Ark. 517, 153 S.W. 823 (1913), the supreme court stated, "If the language be plain, unambiguous and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the courts can not give it a different meaning." Here, the majority has looked beyond the plain wording of the statute to find ambiguity and in so doing has impermissibly invaded the legislature's province to change the plain and unambiguous meaning of section 9-9-220.

I also believe that the majority erred in not finding that the version of section 9-9-220 as amended by the legislature in 2001 was immediately applicable because it is procedural in nature. In *Fowler v. McHenry*, 22 Ark. App. 196, 737 S.W.2d 663 (1987), we quoted with approval the following language from *Dargel v. Henderson*, 200 F.2d 564 (Emer. Ct. App. 1952): "We think that this conclusion is in accord with the settled rule that changes in procedural or remedial law are generally to be regarded as immediately applicable to existing causes of action and not merely to those which may accrue in the future unless a contrary intent is expressed in the statute." The test for whether a statute is procedural in nature is if it does not disturb vested rights, or create new obligations, but only supplies a new or more appropriate remedy to enforce an existing right or obligation. *Harrison v. Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962). The notice and opportunity to cure provisions contained within subparagraphs 9-9-220(c)(1)(B) and section 9-9-220(c)(1)(C)(1) clearly do not disturb a vested

right or create a new obligation. Statutory provisions concerning the relinquishment˜and termination of the parent and child relationship based on the failure of a parent to maintain contact with or support the child have been on the books for decades. *See* Ark. Stat. Ann. § 56-220 (Supp. 1985). The notice and opportunity to cure provisions merely provide a "more appropriate" way to enforce the termination provisions, not the right to terminate itself, and accordingly, must be found to be procedural in nature. *See Arkansas State Police v. Welch*, 28 Ark. App. 234, 772 S.W.2d 620 (1989).

I respectfully dissent.