IN THE MATTER OF THE ADOPTION OF Cotey Allen
PARSONS, A Minor

90-11                                                   791 S.W.2d 681

Supreme Court of Arkansas
Opinion delivered June 11, 1990
[Supplemental Opinion on Denial of Rehearing
July 16, 1990.*]

---

*Dudley and Price, JJ., concur in part and dissent in part.

*Lynn Pence*, Central Arkansas Legal Services, for appellant.

*Hartenstein, Taylor & Montgomery*, by: *Ray Hartenstein*, for appellee.

JACK HOLT, JR., Justice. This is an adoption case, in which the Probate Judge of the Pulaski County Probate Court, Fifth Division, denied both a motion to set aside the interlocutory order of adoption and a petition for writ of habeas corpus filed by the appellant, Deborha Parsons, natural mother of the child subject to adoption.

On appeal, Parsons alleges 1) that the trial court erred in entering the decree of adoption prior to the expiration of the ten day period of revocation contained in the consent that she signed and the decree of adoption itself, and in violation of the adoption laws of Arkansas, thereby constituting a violation of her due process rights under Arkansas law and the fourteenth amendment of the Constitution of the United States, and 2) that the trial court erred by failing to grant her motion to set aside the interlocutory order of adoption and her petition for writ of habeas corpus and by finding that there are two separate ways to consent to adoption.

We agree that the trial court erred in entering its decree of adoption prior to the expiration of the ten day period of revocation and reverse and remand.

The facts underlying this case are that Parsons, nineteen years old and unmarried, gave birth to a male child in Little Rock, Arkansas, on October 10, 1989. Medical expenses, in the amount of $1445.00, and living expenses, in the amount of $2603.08, were paid by the prospective adoptive parents on behalf of, and to, Parsons.

On October 12, Parsons signed a lengthy document entitled Affidavit and Consent of Natural Mother that contained separate

sections on surrender of the child and consent to adoption. The next day, a hearing was held in the probate court, and a decree of adoption was filed, which contained a provision that the decree was subject to Parsons' right of withdrawal on or before October 22, 1989. On October 17, Parsons attempted to withdraw her consent by sending copies of her revocation to the attorney for the prospective adoptive parents, as well as to the probate court. This appeal follows the refusal of the chancellor to grant Parsons' requested relief.

As adoptions were unknown to the common law, they are governed entirely by statute. *Irvan* v. *Kizer*, 286 Ark. 105, 689 S.W.2d 548 (1985). The Revised Uniform Adoption Act, Ark. Code Ann. §§ 9-9-201 to -224 (1987 and Supp. 1989), distinguishes between two methods by which a child may be adopted: 1) the relinquishment of the right to consent to adoption to a third party, embodied in section 9-9-220, and 2) direct consent to adoption by an individual, embodied in section 9-9-208. These two provisions are mutually exclusive, in that they address separate methods by which a child may be adopted and provide different means by which the relinquishment of consent or direct consent may be withdrawn.

Section 9-9-220 addresses the relinquishment and termination of the parent and child relationship and provides in pertinent part as follows:

> (b) All rights of a parent with reference to a child, including the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of parent and child terminated by a writing, signed by an adult parent. . . .

> (1) The relinquishment may be withdrawn within ten (10) days after it is signed or the child is born, whichever is later. The relinquishment is invalid unless it states that the parent has this right of withdrawal; . . .

The Affidavit and Consent of Natural Mother that Parsons read and signed on October 12, 1989, contained a section labeled Surrender of the Child, which correlated with section 9-9-220 and provided in pertinent part as follows:

5. That I can have reasonable time to think over my consent prior to an interlocutory (temporary) hearing which will be held in the Pulaski County Probate Court on *October 13 [handwritten]*, 1989, or at such time thereafter as the court shall determine, in which the adopting parents, petitioners herein, will be awarded custody of the infant to be adopted.

6. That I may automatically withdraw my consent within ten (10) days of the signing of this consent by notifying the attorney for the adopting parents or the Probate Court of the county in which the adoption is pending.

7. That after my right of withdrawal of consent expires and the court enters any order effecting the custody of the infant, I may only withdraw my consent for good cause. I understand that good cause means fraud, duress or intimidation in obtaining of my consent.

The same Affidavit and Consent of Natural Mother contained a section labeled Consent, which correlated with section 9-9-208 (1987) and stated in pertinent part as follows:

I have full knowledge and understanding as to the nature of these proceedings and fully realize that I will lose all legal rights in and to the infant as soon as this paper and accompanying pleadings are signed and filed with the court in which the adoption is pending. Notice of revocation of my consent shall be given effect only if the adoptive parents fail to oppose such revocation or, if they oppose such revocation and the court determines that *the best interests of the child will be promoted by giving force and effect to such revocation.*

In effect, I have advised and I am fully aware that once I surrender physical custody of the child and sign the various papers necessary to commence the adoption proceedings, that there is a possibility that I may never be able to regain custody of the child even if I change my mind and seek custody of the child later.

Section 9-9-209 (1987) addresses the withdrawal of consent to adoption and provides:

(a) A consent to adoption cannot be withdrawn after the entry of a decree of adoption.

(b) A consent to adoption may be withdrawn prior to the entry of a decree of adoption if the court finds, after notice and opportunity to be heard is afforded to petitioner, the person seeking the withdrawal, and the agency placing a child for adoption, that the withdrawal is in the best interest of the individual to be adopted and the court orders the withdrawal.

In construing the provisions in the Affidavit and Consent of Natural Mother and the effect of Parsons's attempted revocation, we note that although this case involves an attempt to perfect a direct adoption covered by section 9-9-208, the attorney for the prospective adoptive parents also included in her consent forms the provision relating to the relinquishment of parental rights to third parties, covered by section 9-9-220. This blending of different statutory consent requirements appears to be in compliance with a "local rule" imposed by the probate judge.[1] We do not sanction local rules as such. *In re: Changes to the Arkansas Rules of Civil Procedure and the Arkansas Rules of Appellate Procedure, Abolishment of the Uniform Rules of Circuit and Chancery Courts, and Publication of Administrative Orders*, 294 Ark. 664, 742 S.W.2d 551 (1987). Be this as it may, the probate judge's requirement of a local rule was not only inappropriate, but her underlying interpretation of *Bruce v. Dillahunty*, 293 Ark. 479, 739 S.W.2d 522 (1987), was wrong.

We thought that we had made the matter of consent clear in *Bruce v. Dillahunty, supra*, but perhaps not. In any event, we reiterate that sections 9-9-208 and -209 are mutually exclusive from section 9-9-220 in obtaining the relinquishment of consent or consent to an adoption. Either one or the other should be employed based on the applicable circumstances of the adoption; the use of both provisions in this instance was in contravention of the statutes and should not be repeated.

Parental rights and the integrity of the family unit have

---

[1] Appellees state in their brief that the "ten day notice provision" must be included in "any" consent to adoption filed in the probate judge's division.

always been a concern of this state and their protection regarded as a proper function of the courts. The conditions upon which parental rights are to be terminated are a question of policy, the resolution of which is addressed in a democracy to the policy making branch of government, the General Assembly, and it is not for the courts to make a statute say something that it clearly does not. *Davis* v. *Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979). Additionally, it is settled law that statutory provisions involving the adoption of minors are strictly construed and applied. *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980).

We reaffirmed our position of giving careful protection to a natural parent's rights in *In the Matter of the Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986) (citing *Woodson* v. *Lee*, 221 Ark. 517, 254 S.W.2d 326 (1953) (quoting *In re Cordy*, 169 Cal. 157, 146 P. 532 (1914))):

> . . . the power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by the statute, such statute should be strictly construed; that 'the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. . . . Every intendment should have been favor of the claim of the mother under the evidence, and if the statute was open to construction and interpretation it should be construed in support of the right of the natural parent.'

In this case, the combining of the two statutory methods by which one may give up one's child for adoption in a single affidavit resulted in prejudice to Parsons, the natural mother. Based on the wording of the affidavit, Parsons had a right to rely on the representation that she had a ten day period to automatically withdraw her consent to her child's adoption. Parsons' right is complemented by the trial court's inclusion of this ten day right to withdraw consent provision in its decree of adoption, to wit:

IT IS THEREFORE, BY THE COURT CONSID-
ERED, ORDERED AND DECREED that Baby Boy
Parsons be and he is hereby adopted by the petitioners,
_____ and _____ husband and wife; that the
name of the child is hereby changed to _____ that
from this date forward (subject to the natural mother's
right of withdrawal on or before *10/22/89) [handwritten]*)
to all legal intents and purposes said child shall be the child
of the petitioners; the provisions of the Decree will be final
as provided by law, unless sooner vacated by the Court for
good cause shown, and a substituted birth certificate shall
be issued showing the adopting parents as the parents of
the child and showing the name of the child to be
_____ .

█ Consequently, in giving careful protection to the natu-
ral mother's rights, we must construe the terms of the affidavit
and the court decree in favor of Parsons and find that, under these
circumstances where both relinquishment of parental rights and
consent provisions were contained in the same document purport-
ing to sanction the adoption of a minor child and the trial court
included the ten day right to withdraw provision in its decree of
adoption, the document was, in the main, a relinquishment of
parental rights as embodied in section 9-9-220. As a result,
Parsons' revocation of her relinquishment five days after she
signed the affidavit was effective.

Accordingly, Parsons' claim on the child as the child's
natural parent remains intact.

We reverse and remand the case for the entry of an order
consistent with this opinion.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I agree with the majority's
interpretation of Ark. Code Ann. § 9-9-208 (1987), consent for
adoption, and Ark. Code Ann. § 9-9-220 (1987), relinquishment
and termination of parent/child relationship. These two statutes
provide mutually exclusive methods for executing adoptions.
However, I respectfully disagree with the majority's application
of these statutes to the facts before us.

The majority avoids deciding whether § 9-9-208 requires a ten day revocation period as set out in § 9-9-220. Instead, it reasons that because the form ("Affidavit and Consent of the Natural Mother") signed by the appellant on October 12, 1989, contained language combining the two statutory methods for placing a child for adoption, the "affidavit resulted in prejudice to Parsons, the natural mother." The majority disregards entirely the welfare of the child or the interests of the adopting parents, in whose custody and care the child has reposed since October 13, 1989, all of which occurred at the behest of the appellant, who incidentally received some $2,603.08 during her pregnancy plus the payment of all medical and hospital bills. Furthermore, the appellant herself instigated the placement of her child for adoption by responding to a newspaper ad placed by adoptive parents, and later by personally talking with the appellees.

The Affidavit and Consent form signed by the appellant included a section entitled "Surrender of the Child" which corresponds to § 9-9-220. Under this paragraph the appellant read language stating that she may automatically withdraw her consent within ten days of signing this consent. Additionally, this document contained a paragraph entitled "Consent," corresponding to § 9-9-208. Under this paragraph the appellant read that "notice of revocation of my consent shall be given effect only if the adoptive parents fail to oppose such revocation, or if they oppose such revocation and the court determines that the *best interest of the child will be promoted by giving force and effect to such revocation*." [Emphasis in original.] Although the document signed contained language relating to § 9-9-208, consent to adoption, and language pertinent to § 9-9-220, relinquishment of parent/child relationship, by concluding that prejudice resulted to the natural mother, the majority implicitly decides that the relinquishment language of § 9-9-220 dominates, granting the appellant a ten day revocation period, or alternatively, judicially legislating a ten day revocation period into § 9-9-208.

Admittedly, the ambiguous language in this document is unfortunate and the ten day withdrawal provision included in the chancellor's decree of adoption complicates the issue. But the solution, as I see it, is not to interpret this document as a "relinquishment of the parent/child relationship" or as a "consent to adoption." The proper course in attempting to deal with

this situation should be for us to remand the case for a determination of the best interests of the child. The majority opinion simply directs the trial court to return the child to its natural mother irrespective of other compelling considerations. Adoptions were unknown to the common law and are entirely statutory. Any attempt to grant rights to the natural relatives, in the absence of statutory authority, is against public policy and is void. *Irvan v. Kizer*, 286 Ark. 105, 689 S.W.2d 548 (1985).

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### JULY 16, 1990

*Lynn Pence*, Central Arkansas Legal Services, for appellant.

*Hartenstein, Taylor & Montgomery*, by: *Ray Hartenstein*, for appellee.

JACK HOLT, JR., Chief Justice. The petition for rehearing is denied. In doing so, we note that the wording in Ark. Code Ann. §§ 9-9-214(c) and -214(d) (1987) is plain and unequivocal and provides, in pertinent part, as follows:

> (c) If . . . the court determines that the required consents have been obtained or excused and that the adoption is in the best interest of the individual to be adopted, it may (1) issue a final decree of adoption . . . .

> (d) If the requirements for a decree under subsection (c) have not been met, *the court shall dismiss the petition and determine the person to have custody of the minor, including the petitioners if in the best interest of the minor*. . . . (Emphasis added.)

As we pointed out in our majority opinion, adoptions were unknown to the common law, and they are governed entirely by statute. In this instance, the law provides that the court shall dismiss the petition and determine the person to have custody of

the minor, including the petitioners if in the best interest of the minor.

DALE PRICE, Justice, concurring in part, dissenting in part. I concur with the majority that rehearing should be denied. I dissent for two reasons. First, this court in its original opinion decided the custody issue by holding that the consent to adoption was withdrawn, the decree of adoption void, and the natural mother's claim on the child remained intact. As far as I'm concerned, that settled the custody issue.

Second, the probate court to which this case is being remanded lacks jurisdiction to hear custody cases. This was an adoption case, heard by the probate judge and appealed. We reversed and remanded to the probate court. The majority, in its supplemental opinion, suggests that under Ark. Code Ann. § 9-9-214(d) (1987) the probate judge should determine the person who is to have custody of the minor. This holding overlooks the fact that probate courts are without power or authority to determine custody matters. *Edwards* v. *Martin*, 231 Ark. 528, 331 S.W.2d 97 (1960).

I respectfully dissent.

DUDLEY, J., joins.