Vickie VICE *v.* Lena Loraine ANDREWS and Larry Duane Andrews, Jr.

96-544                                                  945 S.W.2d 914

Supreme Court of Arkansas
Opinion delivered May 19, 1997

*Hani W. Hashem*, for appellant.

*Michael D. Ray*, for appellees.

RAY THORNTON, Justice. Ricky Wilkinson and Lena Loraine Andrews were divorced in Alabama on November 26,

1991. One child, Margaret LeAnn, was born to the couple during their marriage. Lena Loraine later married Larry Duane Andrews, Jr., and they moved to Arkansas. A petition was filed in probate court to allow Larry Duane to adopt the minor child, and Ricky Wilkinson, the biological father, consented to this proposed adoption according to the provisions of Ark. Code Ann. § 9-9-220 (Supp. 1995). On August 16, 1995, the final decree of adoption was entered granting Larry Duane's adoption of Margaret LeAnn. Appellant, Vickie Vice, is the mother of Ricky Wilkinson, and therefore is the biological grandmother of Margaret LeAnn.

This case presents the issue whether a biological grandmother's statutory right to petition for visitation can withstand a motion to dismiss on grounds that an adoption terminated the legal relationship between the child and her biological grandmother. The chancery court found that the adoption, which was granted with the consent of the biological father, not only terminated any relationship he might have with his daughter, but also terminated any rights of visitation which his mother, Ms. Vice, might claim. We agree and affirm.

From the time of King Solomon, the decision as to which of two competing claimants should be allowed to nurture and rear a young child has challenged the best efforts of our institutions of jurisprudence. Unlike many controversies whose resolution depends upon a judgment as to which party is right and which party is wrong, a choice between the rights of an adopting parent and visitation by a biological grandparent requires a decision between parties who truly and sincerely care for the child.

The public policy regarding this issue has been established by legislation. The laws relating to adoption are derived from statutes; and at common law, a grandparent could not maintain an action for visitation rights to a grandchild except as a party to a custody proceeding. *Reed v. Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994) (citing *Quarles v. French*, 272 Ark. 51, 611 S.W.2d 757 (1981)). We have often relied on our rule that any right that a grandparent possesses must be either derived from statutes or conferred by a court of competent jurisdiction pursuant to statute. *Id.*

at 19, 889 S.W.2d at 730 (citing *Cox v. Stayton*, 273 Ark. 298, 619 S.W.2d 619 (1981)).

In recent years, Arkansas statutory law has become more liberal in establishing grandparents' rights. In 1975, the legislature provided for grandparent visitation in the event of divorce or custody proceedings. Ark. Stat. Ann. § 34-1211.1 (Supp. 1983). A later amendment enacted a very broad standard for grandparent visitation and allowed visitation to a grandparent "regardless of the marital status of the parents of the child or the relationship of the grandparents to the person having custody of the child." Ark. Stat. Ann. § 34-1211.2 (Supp. 1985). In 1987, the legislature again revised this area of statutory law and granted courts permissive authority to allow grandparents visitation in situations where the "relationship between the parents of the child has been severed by death, divorce, or legal separation." Ark. Code Ann. § 9-13-103(a)(1)(A) (Supp. 1995). This is the current law, which Ms. Vice cites as applicable to the present case.

If there had been no adoption, the provisions of Ark. Code Ann. § 9-13-103 permitting grandparent visitation privileges would be the controlling statute. However, not only were Margaret LeAnn's parents divorced, but her biological father voluntarily consented to her adoption by a stepparent.

Even as grandparent's visitation rights have been articulated by statutory expressions of public policy, so also have there been statutory declarations of public policy favoring the rights of an adoptive family over the interests of biological relatives. Except with respect to the adopting parent's spouse and his or her relatives, the effect of the final decree of adoption is to "terminate all legal relationships between the adopted individual and his natural relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes." Ark. Code Ann. § 9-9-215(a)(1) (Supp. 1995). When a natural parent consents to the adoption of a child by another person, the consenting parent's relatives lose their legal rights to visitation because such rights are derivative of the consenting parent's rights and likewise are terminated when parental rights are ended. *See*

Chauncey Brummer and Era Looney, *Grandparent Rights in Custody, Adoption, and Visitation Cases*, 39 ARK. L. REV. 259 (1985).

■ In *Suster v. Arkansas Dep't of Human Services*, 314 Ark. 92, 858 S.W.2d 122 (1993), we interpreted Ark. Code Ann. § 9-9-215(a)(1) as an expression of public policy favoring a complete severance of the relationship between the adopted child and its biological family in order to further the best interest of the child. *Id.* at 97, 858 S.W.2d at 125. Because all legal relationships terminate once a child is adopted, a biological grandparent is no longer legally entitled to visitation privileges. *Id.* In *Suster*, we reiterated that it is "unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin. . . ." *Id.* (quoting *Wilson v. Wallace*, 274 Ark. 48, 50, 622 S.W.2d 164, 166 (1981)).

■ A recent modification of this complete termination of grandparents' rights was adopted by Act No. 889 of 1995, codified at Ark. Code Ann. § 9-9-215, which enacted an exception to the termination of grandparent's visitation rights by the following language:

> However, in cases where a natural or adoptive parent dies before a petition for adoption has been filed by a step-parent of the minor to be adopted the Court may grant visitation rights to the parents of the deceased natural or adoptive parent of the child if such parents of the deceased natural or adoptive parent had a close relationship with the child prior to the filing of a petition for step-parent adoption, and if such visitation rights are in the best interest of the child.

*Id.* § 9-9-215(a)(1). This limited exception does not apply to the facts in the case before us, as this statute specifically relates to visitation rights derived through a deceased parent when those rights are asserted before the adoption decree is entered. However, the statutory language confirms the principle that with very narrow and specific exceptions, all legal relationships between the adopted individual and her natural relatives are terminated upon adoption.

■ Ms. Vice also states that she received no notice of the adoption and that she previously had acted *in loco parentis* to Mar-

garet LeAnn because she allowed the child to live in her home for several months. However, in her appeal she does not provide authority for any claim that she was legally entitled to notice or deprived of any right to intervene in the adoption proceedings.

We agree with the chancellor's determination that Ms. Vice's rights were derivative of her son's rights, and that the effect of Ark. Code Ann. § 9-13-215 was to terminate those rights. We hold that the chancellor did not err in granting the motion to dismiss appellant's petition for visitation.

Affirmed.