2009 Ark. 114

**In re ADOPTION OF M.K.C.**

No. 08–1367.

Supreme Court of Arkansas.

March 5, 2009.

Sanford Law Firm, PLLC, by: Josh Sanford, Russellville, for appellant.

JIM GUNTER, Justice.

This is a second appeal which arises from an order of the Pope County Circuit Court denying an adoption petition filed by Appellant Callie Michelle Cox to adopt her biological child, M.K.C. We affirm.

In the first appeal, Appellant asserted that the circuit court erred in denying her petition for adoption by ruling that Arkansas Code Annotated section 9–9–204(3) (Repl.2002) does not permit an unmarried natural mother to adopt her own child. On June 5, 2008, we reversed the order of the circuit court and remanded the case for a consideration of the adoption petition on the merits. *See In re Adoption of M.K.C.*, 373 Ark. 603, 285 S.W.3d 605 (2008) (*M.K.C. I*). Citing the reasoning set forth in *King v. Ochoa*, 373 Ark. 600,

285 S.W.3d 602 (2008), handed down the same day, we held that the circuit court erred in its interpretation of § 9–9–204 and that the statute does permit an unmarried parent to adopt his or her biological child. On remand, the circuit court denied the adoption as not in the best interest of the child. Appellant now brings this appeal.

On appeal, Appellant asserts that the decision of the circuit court that the adoption of M.K.C. was not in the best interest of the child was clearly against the preponderance of the evidence, and the court's denial of Appellant's petition for adoption was clearly erroneous. Specifically, Appellant contends that (1) the circuit court erred in its application of Ark.Code Ann. § 9–9–215(a)(1) and (a)(2); (2) Appellant met all requirements of the Arkansas adoption statutes; and (3) the trial court erred in its dismissal of Appellant's testimony as to abuse by the biological father.

Before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *In re Adoption of A.M.C.; Dixon v. Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985). We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witness. *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007); *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997).

Arkansas Code Annotated § 9–9–215 (Repl.2002) states, in pertinent part:

(a) A final decree of adoption and an interlocutory decree of adoption which has become final, whether issued by a court of this state or of any other place, have the following effect as to matters within the jurisdiction or before a court of this state:

(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his or her biological relatives, including his or her biological parents, so that the adopted individual thereafter is a stranger to his or her former relatives for all purposes. This includes inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship....

(2) To create the relationship of parent and child between petitioner and the adopted individual, as if the adopted individual were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted individual from their operation or effect.

The circuit court found that, under § 9–9–215(a)(1) the effect of the adoption would impact the child's relationship with the biological father because the relationship would involve the child's right to support and inheritance.

In determining the best interest of the child, the court weighed the benefit of the child that would result from a separation from a biological father with which the child currently has *no relationship* against the detriment to the child that would result from the loss of support, right to seek

support, and the right of inheritance. The court stated that the loss of a relationship that does not exist between the father and child "cannot be given much weight" as it "would require speculation." The court went on to say that, as to the severance of the child's right to receive financial support and inheritance, "the Court is without evidence as to the father's financial circumstances or that of his family." "To provide any substantial weight in this regard would require speculation on the part of the Court."

In applying § 9–9–215(a)(2), the circuit court found that Appellant is the natural mother and "the relationship contemplated under this subsection already exists." The court then weighed the effect of § 9–9–215(a)(1) against the benefit to the child resulting from the creation of the relationship contemplated in § 9–9–215(a)(2). The court found that, because "the child currently enjoys all aspects of the relationship contemplated in that section," the child does not gain anything from an adoption decree under § 9–9–215(a)(2). The court afforded "little, if any, weight" to the creation of such a relationship in its analysis.

The circuit court concluded that, when applying the statutory effect of the adoption to the circumstances at issue here, the adoption was not in the best interest of the child. On appeal, Appellant contends that the circuit court's decision on remand does not adhere to this court's mandate in the first appeal. We disagree. Our opinion in *M.K.C. I* simply reiterated that the plain language of section 9–9–204 allowed a natural parent to adopt his or her own child. Here, we conclude that it is appropriate for the circuit court in a best-interest-of-the-child analysis to consider the relative benefits or detriments of a child, including those set out by the General Assembly.

In addition to the statutory considerations addressed above, the circuit court had before it certain testimony. Appellant testified that she was unmarried and that the child has no legal father. No man has ever lived with her and/or the child and no man has ever provided for the child. No one has ever identified himself in a sworn document as the father or has ever registered with the putative father registry claiming to be the father. Appellant testified that she and the father were in a relationship for about three months. According to Appellant, he started using drugs and alcohol and would rape her every night. She also testified that he would hit her and his children. He would drink to the point that he would become abusive and then drink to the point that he would pass out. She testified that his children would splash in the bathtub and he would hit them with a leather belt while they were naked because he thought it was annoying. Appellant stated that she would fear for the welfare of her child if she had any contact with the father. Appellant's mother, Kay Cox, has guardianship of the child because Appellant was having medical problems and was unable to care for the child. Appellant has always retained physical custody of the child. Kay Cox filed a consent on June 30th to the adoption proceeding. Appellant testified that she has the facilities and resources suitable to continue to provide for the care and nurture of the child. She stated that she wanted the court to terminate the prospective rights of *any person* who would claim to be M.K.C.'s father.

Appellant's mother testified that she had no reason to believe that Appellant was untruthful about the father's drinking, his drug use, his criminal history, or the kind of physical abuse that he perpetrated on his own children. She also stated that she had heard Appellant's allegations against the father from the time that Appellant told her that she was pregnant. However,

she "was not around for much of the things [Appellant] talked about."

The circuit court found that Appellant's testimony regarding the rape and abuse to her and the abuse by the father of his children was not credible. Specifically, the court noted that when it came time to allege the multiple rapes by the child's father, Appellant was "unable to do so with any degree of veracity." The court also found that her lack of credibility continued through the allegations of drug use, alcohol use, and physical abuse of his two small children. "This lack of credibility combined with the complete absence of any supporting testimony, documentation, or other evidence as to the acts alleged, results in the allegations being afforded no weight in the Court's determination of the best interest of the child."

In order to grant the adoption petition, the circuit court must find that there is clear and convincing evidence that the adoption is in the best interest of the child. *See In re Adoption of A.M.C, supra.* We note that although the child's father lived with Appellant for three months, he is not named. No paternity has been established. We also note the absence of corroborating testimony or evidence as to Appellant's allegations regarding the father's use of alcohol and drugs or the father's abuse of his children, other than what Appellant told her mother. The circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *See Posey v. Ark. Dep't of Health & Human Servs.,* 370 Ark. 500, 262 S.W.3d 159 (2007). We give great weight to a trial judge's personal observations when the welfare of young children is involved. *In re Adoption of A.M.C., supra.* It was Appellant's burden to present credible evidence to convince the circuit judge that adoption was in the

best interest of the child. Considering the circuit court's determination that the effect of the adoption statute was speculative and that Appellant's allegations against the father could be afforded no weight, she failed to meet this burden. Based on our standard of review that we will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, we hold that the circuit court did not err in denying the adoption petition. Accordingly, we affirm.

Affirmed.

CORBIN, J., dissents.

CORBIN, J., dissenting.

I must dissent in this case because the majority is affirming the circuit court's order despite the fact that it runs completely counter to this court's holding in *In re Adoption of M.K.C.,* 373 Ark. 603, 285 S.W.3d 605 (2008) (*M.K.C. I* ), and *King v. Ochoa,* 373 Ark. 600, 285 S.W.3d 602 (2008). The majority's total about-face from those decisions truly boggles my mind.

The majority concludes that the circuit court did not err in denying the adoption petition because the mother failed to present evidence that the adoption was in the child's best interest. It is axiomatic that a circuit court must find from clear and convincing evidence that an adoption is in the best interest of a child. *See In re Adoption of A.M.C.,* 368 Ark. 369, 246 S.W.3d 426 (2007); *Dixon v. Dixon,* 286 Ark. 128, 689 S.W.2d 556 (1985). The problem in the instant case, however, is that in evaluating whether adoption was in M.K.C.'s best interest, the circuit court incorrectly weighed factors that this court clearly held were policy issues to be considered by the General Assembly and not the courts of this state.[1] *See Ochoa,* 373 Ark. 600, 285

---

1. The majority opinion spends a great deal of

time discussing the fact that the trial court

S.W.3d 602. In that case, the circuit court denied a petition for adoption filed by a child's biological father. The circuit court concluded that a biological parent was not eligible to adopt his or her own child despite the plain language in Ark.Code Ann. § 9–9–204(3) (Repl.2002) that provides that an unmarried father or mother of the individual may adopt. In recognizing that the effect of section 9–9–204(3) was to terminate the rights of the other biological parent, this court stated:

> Parental rights and the integrity of the family unit have always been a concern of this state and their protection regarded as a proper function of the courts. See [In re Adoption of] Parsons, [302 Ark. 427, 791 S.W.2d 681 (1990) ]. The conditions upon which parental rights are to be terminated are a question of policy, the resolution of which is addressed in a democracy to the policy-making branch of government, the General Assembly, and it is not for the courts to make a statute say something that it clearly does not. Id. (citing Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37 (1979)).

Ochoa, 373 Ark. at 602, 285 S.W.3d at 604. This court further noted that the circuit court also denied the petition because to allow the adoption would have terminated any financial responsibility on the part of the minor's mother. Specifically, we quoted the following from the circuit court's order:

> Her consent does not change my mind about this. This is evidently a parent that by virtue of the consent does not want anything to do with the child.

And, while this is an unfortunate set of circumstances, she still has the financial responsibility to look to and provide for that child. The state and the custodial parent have the obligation to pursue that, unless they are able to take care of the child financially themselves. In the event that the custodial parent were to pass away, if I were to grant this adoption, there would be no one else out there except you and I and the state to take care of this child.

This court then concluded:

> We hold that this policy concern of the circuit court is a question that should be addressed by the legislature.

Id. at 602–603, 285 S.W.3d at 604–605. We further noted that while section 9–9–204 sets forth who may adopt, the other requirements of the Revised Uniform Adoption Act must still be satisfied. Ochoa, 373 Ark. 600, 285 S.W.3d 602. This is where the majority now goes astray.

In today's opinion, the majority quotes only parts of the circuit court's order on remand and then, in a most strained fashion, attempts to legitimize the court's analysis by relying on Ark.Code Ann. § 9–9–215 (Repl.2002) for the proposition that the circuit court properly considered the policy issues of support and future inheritance in determining the best interest of the child. The problem is that section 9–9–215 does not allow a court to consider such policy issues, nor has this court ever interpreted it as such—until today.

The circuit court sets out the relevant portion of section 9–9–215(a)(2) and then improperly uses it as the guidepost in

found the petitioner to be less credible with regard to allegations she made that the child's father was abusive, both to her and to his other children, and had substance-abuse problems, but the circuit court's opinion itself acknowledged that its credibility determination was given no weight in its analysis of the

child's best interest. As such, it escapes me as to why the majority spends so much time on this issue, other than to divert attention from the fact that it has no support for its conclusion that the trial court correctly analyzed the best interest of the child.

determining best interest. Specifically, the circuit court stated:

This Court then looked at the effect of a decree of adoption *applying the results of A.C.A. 9–9–215(a)(1) analysis* weighing such against the benefit to the child resulting from the creation of the relationship contemplated in A.C.A. 9–9–215(a)(2). The child currently enjoys all aspects of the relationship contemplated in that section. The child gains nothing from a decree of adoption under this subsection. The benefits set out therein already exist and, therefore, the creation of the relationship between mother/petitioner and the adopted individual is afforded little, if any, weight in the analysis.

It is clear from the Court's reading of A.C.A. 9–9–215 that the adoption proceedings contemplate a child receiving more than it loses as a result of the adoption. What a child might lose in inheritance or financial support in the termination of a biological parent's obligations under Subsection (a)(1) could easily be outweighed by the creation of a new relationship under subsection (a)(2) providing care, affection, and guidance even if less money attenuates the "created" relationship.

Clearly, the circuit court's attempted reliance on section 9–9–215 as a basis for denying the petition because of support and inheritance issues was erroneous. The purpose of section 9–9–215 is to explain the effects of an adoption decree, for example, that an adoption decree severs the relationship between an adopted child and his or her biological family. The section provides in relevant part:

*9–9–215. Effect of decree of adoption.*

(a) A final decree of adoption and an interlocutory decree of adoption which has become final, whether issued by a court of this state or of any other place, have the following effect as to matters within the jurisdiction or before a court of this state:

(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his or her biological relatives, including his or her biological parents, so that the adopted individual thereafter is a stranger to his or her former relatives for all purposes. This includes inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed. . . .

(2) To create the relationship of parent and child between petitioner and the adopted individual, as if the adopted individual were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted individual from their operation or effect.

Thus, section 9–9–215 simply explains that an adoption decree terminates financial responsibility on the part of a biological parent or terminates a right to inheritance from the biological family. It also explains the creation of a new relationship resulting from an adoption decree. In fact, this court has interpreted this statute "as an expression of public policy favoring a complete severance of the relationship between the adopted child and its biological family in order to further the best interest of the child." *Vice v. Andrews*, 328 Ark. 573, 945 S.W.2d 914 (1997) (citing *Suster v. Ark. Dep't of Human Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993)).

My position is further supported by a review of our cases that have involved section 9-9-215. Those cases fall into two main categories. The first involves the propriety of grandparent visitation where an adoption is at issue. *See, e.g., Hendrix v. Black,* 373 Ark. 266, 283 S.W.3d 590 (2008); *Tate v. Bennett,* 341 Ark. 829, 20 S.W.3d 370 (2000). The second involves issues of inheritance rights. *See, e.g., Wheeler v. Myers,* 330 Ark. 728, 956 S.W.2d 863 (1997); *Sides v. Beene,* 327 Ark. 401, 938 S.W.2d 840 (1997). At no time since section 9-9-215 was enacted in 1977 has this court used the language of this section regarding the effect of an adoption decree in the manner that it does today.

I suspect that the majority's attempt to find any way to affirm this case has more to do with a dislike of our rulings in *M.K.C. I* and *King* and a disapproval of the fact that the child's father has never been identified. The majority simply does not think it is right for this mother to adopt her own child, particularly when they know nothing about the child's father. The father's identity is wholly irrelevant. It was undisputed that the father had never registered with the Arkansas Putative Father Registry or in any other way attempted to legitimate the child; thus, he was not entitled to any type of notice of the adoption proceeding. *See Escobedo v. Nickita,* 365 Ark. 548, 231 S.W.3d 601 (2006) (holding that the biological father was not entitled to notice of adoption proceeding where he failed to properly legitimate his child).

We are to presume that the General Assembly was aware of the fact that a child adopted by his or her biological parent would lose the right to future support or inheritance, as explained in section 9-9-215, when it provided that a biological parent could adopt his or her child pursuant to section 9-9-204(3). Under the majority's opinion, however, there will rarely, if ever, be a situation where it is in a child's best interest to be adopted by his or her biological parent, because support and inheritance from the other biological parent will always be terminated and there is not likely to be the creation of a "new" relationship as is the case when a child is adopted by someone other than a biological parent. In short, the majority opinion completely eviscerates the General Assembly's clear intent to allow adoption of a child by a biological parent. Because the majority's opinion is clearly contrary to the intent of the General Assembly and in direct contravention of this court's own precedent, I dissent.