# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–160

<table>
<tr><td>IN RE<br>ADOPTION OF K.M. and K.M.</td><td>OPINION DELIVERED SEPTEMBER 9, 2015<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. JV-2012-742]<br><br>HONORABLE ANNIE P. HENDRICKS, JUDGE<br><br>AFFIRMED</td></tr>
</table>

**ROBERT J. GLADWIN, Chief Judge**

Neal and Lauren McNutt appeal the November 24, 2014 order of the Sebastian County Circuit Court granting the petition for adoption filed by foster parents Kenyon and Josie Hostetler and denying and dismissing the McNutts' petition for adoption– both petitions relating to the McNutts' nieces. The McNutts argue that (1) consent from the Department of Human Services (DHS) to their petition for adoption was unnecessary and/or was unreasonably withheld; (2) it was in the best interest of the children that the McNutts' petition be granted; and (3) the circuit court erred in refusing the McNutts' request to fully participate in the Hostetlers' adoption-petition hearing. We affirm.

This appeal involves the adoption of twin girls, K.M. and K.M., who were less than two years of age at the time of the hearing. The McNutts are the paternal uncle and aunt of

the children.[1] The parental rights of both parents were terminated by an order dated April 8, 2014. The Hostetlers filed a petition for adoption on November 18, 2013, and the McNutts filed a petition for adoption on January 3, 2014.

The Hostetlers served as foster parents to the children from the time they were released from the hospital five weeks after birth through the dates of the hearings. The McNutts, who are residents of Texas, had no contact or visitation with the children during that period and took no legal action in this matter from the time that DHS filed the petition for emergency custody in 2012 until the filing of their petition for adoption in January 2014. Prior to the McNutts' filing their petition, while DHS looked at various relatives of the biological parents for placement or adoption, the McNutts did have some level of communication with DHS during 2013 regarding the children, including a request for consideration of adoption, but placement was not possible because the McNutts were living in Texas.

The two adoption petitions were heard separately; the circuit court determined that they would not be dealt with in an adversarial manner. The hearing on the McNutts' petition was held on September 3, 2014, and the hearing on the Hostetlers' petition was held on September 17, 2014. The circuit court issued a letter ruling on October 7, 2014, expressing disappointment in DHS's overall management of the case, but recognizing the best interest of the children as the polestar. The circuit court incorporated the letter ruling in favor of the Hostetlers in its November 24, 2014 order, finding it in the best interest of the

---

[1]Appellant Neal McNutt is the brother of the children's biological father.

children to grant the Hostetlers' petition based on the evidence presented at the hearings, the recommendation of the attorney ad litem, and the posttrial evidence submitted by counsel for the McNutts. On December 22, 2014, the McNutts filed a timely notice of appeal from the November 24, 2014 order and subsequent amended notices of appeal on January 29 and February 4, 2015.

Before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *Mode v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 69. *See also In re Adoption of M.K.C.*, 2009 Ark. 114, 313 S.W.3d 513. We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Mode, supra.*

Arkansas Code Annotated section 9-9-206(a)(3) (Repl. 2009) states that "a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by any person lawfully entitled to custody of the minor or empowered to consent." An exception to this requirement exists if the guardian "has failed to respond in writing to a request for consent for a period of sixty (60) days or who, after examination of his or her written reasons for withholding consent, is found by the court to be withholding his or her consent unreasonably." Ark. Code Ann. § 9-9-207(a)(8) (Repl. 2009). This code provision grants the circuit court the authority to decide whether DHS, as the legal guardian of the children, has unreasonably withheld its consent to adopt.

Arkansas Code Annotated section 9-9-214 (Repl. 2009) provides in pertinent part:

> (c) If at the conclusion of the hearing the court determines that the required consents have been obtained or excused and the required period for the withdrawal of consent and withdrawal of relinquishment have passed and that the adoption is in the best interest of the individual to be adopted, it may (1) issue a final decree of adoption; or (2) issue an interlocutory decree of adoption which by its own terms automatically becomes a final decree of adoption on a day therein specified, which day shall not be less than six (6) months nor more than one (1) year from the date of issuance of the decree, unless sooner vacated by the court for good cause shown.
>
> (d) If the requirements for a decree under subsection (c) of this section have not been met, the court shall dismiss the petition and the child shall be returned to the person or entity having custody of the child prior to the filing of the petition.

Ark. Code Ann. § 9-9-214(c)–(d).

The McNutts were required to prove two things to succeed with respect to their petition to adopt the children: that all consents to the adoption had been obtained or waived, and that clear and convincing evidence proved that adoption by them was in the children's best interest. *Lewis v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 347.

## I. *DHS Consent*

Section 9-9-206 requires that a petition for adoption may be granted only if the written consent to a particular adoption has been executed by any person lawfully entitled to custody of the minor or empowered to consent. It is undisputed that DHS had custody of the minor children when the McNutts filed a petition for adoption, and that DHS was notified of the petition when it was filed and served upon their counsel on January 3, 2014. The McNutts note that no response to their petition was filed by DHS, and they argue that the consent of DHS was unnecessary, noting the exception to the consent requirement if the

4

legal guardian fails to respond in writing to a request for consent within sixty days pursuant to section 9–9–207(a)(8).

We hold that consent from DHS was necessary and that the McNutts' failure to request its consent in their petition for adoption or obtain consent or waiver by DHS was a fatal error. By order of the circuit court, DHS had custody of the minor children throughout the case and was therefore lawfully entitled to custody of the minor children. No one has suggested that DHS was not the custodian of the children during the pendency of the case. Further, DHS was specifically given the authority to consent to adoption of the minor children by the order terminating the parental rights of the natural and biological parents. Paragraph nine of that order states that "the Department of Human Services is authorized to consent to the adoption of the juveniles . . . ," and "the juveniles shall not be adopted by any person or persons without the consent of the Arkansas Department of Human Services." Therefore, DHS was specifically empowered to consent pursuant to section 9–9–206(a)(3).

The record is uncontroverted that the McNutts' petition contained no request that DHS give its consent for their adoption of the children. Their petition reflects only that the McNutts understood "that both the natural father and mother's consent would be required for any adoption."

Conversely, DHS did give its consent for the adoption of the children by the Hostetlers, which was filed of record on November 20, 2014. It states "that the Arkansas Department of Human Services authorizes Tambra Stafford, in her capacity as adoption

supervisor, to consent to the adoption . . . ." The consent states that it would be in the best interest of the children that they be adopted by the Hostetlers by a final decree of adoption. The circuit court stated in the decree of adoption that all statutorily required consents had been filed and that no further consents were necessary. The circuit court further noted that the adoption supervisor for DHS was authorized to act on behalf of DHS and that she had properly executed a consent on behalf of DHS.

The McNutts' argument misinterprets the exception to the consent requirement when the legal guardian fails to respond in writing to a request for consent in a petition for adoption within sixty days. If the McNutts' petition had sought DHS's consent to adopt, DHS would have needed to respond in writing; but, the McNutts' petition lacked the needed consent request. Accordingly, their adoption petition did not necessitate any response from DHS . Thus their no-consent-needed argument fails.

We acknowledge the extensive evidence presented regarding communications between the McNutts and DHS, both attempted and completed, via telephone calls, emails, and other correspondence regarding their willingness to participate in the process and their desire to be considered as potential adoptive parents for the children. We also acknowledge the circuit court's expression of disappointment in the manner in which DHS handled the overall management of the case–specifically, the treatment of and poor communication with the McNutts. That said, section 9-9-207(a)(8) grants the circuit court the authority to decide whether DHS, as the legal guardian of the children, unreasonably withheld its consent to adopt. *Mode*, *supra*. We affirm on this point.

## II.  *Best-Interest Analysis*

The preeminent concern of any court in an adoption or custody proceeding is the best interest of the minor children. *Tom v. Cox*, 101 Ark. App. 388, 278 S.W.3d 110 (2008). The McNutts presented evidence to the circuit court about their residency in the McKinney, Texas, school district, which is in the top one percent of school districts in the nation. They provided information about their work, home, and neighborhood environment, as well as research and resources they have available to them to help the children with any issues related to separation anxiety, bonding, and attachment.

The McNutts challenge the circuit court's best-interest findings by comparing the Hostetlers' attitude toward education for the children. It is undisputed that many parents and educators within the Hostetlers' church-based school have completed only eighth-grade educational programs and that the school system allows individuals with eighth-grade educations to teach second-through eighth-grade children. There was also an acknowledgment that there are people in the church who do not believe that it is necessary for girls to receive a formal education beyond eighth grade. The McNutts assert that the decision of the circuit court will put the children at an educational disadvantage for the rest of their lives. Despite testimony about the emotional trauma and possible developmental interruption that could occur as a result of breaking the bond between the children and the Hostetlers, the McNutts argue that there are treatments to address that particular problem.

Based upon our standard of review set forth in *Mode*, *supra*, we are required to affirm the circuit court's decision regarding the best interest of a child to be adopted unless it is

7

clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. Pursuant to that standard, we hold that the circuit court's findings are not clearly against the preponderance of the evidence. Testimony from the hearings on both petitions was summarized by the attorney ad litem and reflected that the cultural environment for the children in each home would be appropriate. Evidence presented regarding the Hostetlers' home, the children in and around the home, and the interaction of the children with the Hostetlers' family at the home and elsewhere reflected that the children are happy and well cared for in that environment. Kenyon Hostetler testified that they made $150,000 in 2013 and that their income was up in 2014. He also testified that he worked his family businesses with his twin brother—and that the fact that he is a twin himself is an asset for rearing a set of twins.

Regarding the educational issues, the Hostetlers repeatedly testified that they did not have a problem with the girls' continued education. Kenyon Hostetler testified that he would like to see the girls get a high-school education and that if they wanted to go to college he would support that. The attorney ad litem noted in his recommendation that regardless of where the children are placed for adoption, "the undisputed evidence is that the girls will have educations better than the national average, and have the full support of their parents going further in school and life."

DHS adoption specialist Laura Case testified that she considered all the possibilities of adoptive placement and that DHS asked family members to come to a consensus. DHS looked at the paternal grandmother of the children; but, she was not acceptable because she

was living with a boyfriend. Next, DHS looked at the children's father's brother and sister-in-law, Kyle and Brittney McNutt; but, they were rejected because they had a small child of their own. DHS also considered the maternal great-grandparents; but, they had to be rejected due to medical issues of the great-grandfather. Ms. Case stated that she had identified the Hostetlers as an adoptive placement, and it was her testimony that the best place for the children to be was with them. Ms. Case testified that she recommended the Hostetlers because she had been to their home several times; the children had a bond with them; and it was not only her personal recommendation but that of DHS as well. She concluded that, "My recommendation is based upon what I think is best for the children."

A portion of DHS's recommendation was based on adoption summaries prepared for each child after the hearing was held that resulted in termination of the biological parents' legal rights. Both adoption summaries are dated February 21, 2014, and were prepared by Lyndon Winn, a licensed, certified social worker and adoption specialist. Mr. Winn found that each child seemed appropriately attached to the foster-adopt family (the Hostetlers) and that neither child showed any signs that would be expected from a child who was not having her needs met. Mr. Winn stated in his recommendation for each child that "she be adopted into a stable loving family that is able to provide the consistent attention, nurture and stability that she has been doing well with. It is also recommended that placement with her twin sister in the foster home that 'she is' currently placed in be given priority consideration."

Gregory Roberts was offered by the attorney ad litem and accepted by the circuit court as an expert witness. Mr. Roberts testified that he had prepared a report, which was

admitted into evidence. He testified that he had met with the Hostetlers and the children twice in the home of the Hostetlers and once in his office. He explained the multiple criteria necessary to his evaluation that were utilized to make proper findings in his report. He observed the frequency of touching between the parent and child, the comfort-seeking behavior, the capacity of the parent to engage the child effectively, eye contact, smiles, separation and reunion, and the parent's ability to meet the child's needs. Mr. Roberts testified that he observed that the children were significantly bonded and attached to both of the Hostetlers, and his reports also reflect that they had established a strong bond and attachment to the Hostetlers. The purpose of Mr. Roberts's assessment was to determine the extent to which the children had bonded and attached to the Hostetlers in light of any possible "interrupting" the current placement and the quality of care and bonding attachment which is crucial to the children's development and well-being. He found that the twins presented appropriate, well-established, and extremely secure traits of attachment to both of the Hostetlers. Mr. Roberts also noted the dangers of interrupting that bonding and attachment of the children, testifying that primary-caregiving interruption would negate or destroy the process of basic development. He stated that primary-caregiving interruption in the first eighteen months of a child's life through the age of three correlates to poor self-regulation. His testimony included that he "believe[s] these children have bonded so much that another adoption would be detrimental." His recommendation was that these children needed to stay with the Hostetlers.

Mr. Casey Copeland, the attorney ad litem for the minor children, filed a written recommendation at the instruction of the circuit court that stated that the children had spent all but the first month of their lives in the Hostetlers' home, that ethnicity was not a factor, and that culturally, the Hostetlers would provide continuity and support educational goals. He relied in part upon the report of Mr. Roberts, stating that consistency and continuity favored the Hostetlers, and that stability mattered. Mr. Copeland reflected that the children's sense of identity and belonging favored the Hostetlers because they have lived and grown up with the Hostetlers as the only family, home, and parents they had ever known. Mr. Copeland concluded his recommendation by stating "that the best interests of the children is served by their adoption in to the Hostetler home."

Following the testimony and exhibits presented by DHS and its adoption specialist, Ms. Case; the licensed certified social worker, Mr. Winn; the expert witness, Mr. Roberts; and the attorney ad litem, Mr. Copeland; and, after extensive research, observation, testimony, and consideration, all agreed that adoption of these children should be by the Hostetlers. The circuit court's November 24, 2014 order recites that the circuit court considered documentary evidence admitted during the hearings, and that "the Court considered all documents, testimony, arguments and recommendations in making its decision." Granting the Hostetlers' petition for adoption, the circuit court made specific findings that "the children have lived in the home of the Hostetler petitioners since being released from the hospital some five weeks after birth, that the children have not lived in another home, that the children have bonded and attached to the Hostetlers, and that

11

removing the children from the Hostetlers poses a risk of harm to their emotional and psychological well-being." In its decree of adoption, the circuit court found that "[i]t is in the best interest of the children that they be adopted by the Petitioners . . ." and that K.M. and K.M. "are hereby adopted by Kenyon and Josie Hostetler."

We hold that the circuit court's decision regarding the best interest of the children was not clearly against the preponderance of the evidence. Accordingly, we affirm on this point.

III. *Circuit Court's Refusal to Allow the McNutts to Participate in the Hostetler Hearing*

The circuit court ruled that the McNutts and their counsel could participate in the Hostetler hearing only to the extent of cross-examining the expert witnesses offered by the Hostetlers or by DHS. Counsel for the McNutts made a specific request to cross-examine the Hostetlers' witness regarding the educational issue, and it was denied. The McNutts note that Arkansas courts have previously allowed opposing petitioners for adoption to participate in the proceeding of the opposing party for the limited scope of exploring the best interest of the minor children. *Cowan v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 576, 424 S.W.3d 318. They argue that the failure of the circuit court to allow them to participate in the Hostetlers' petition hearing had a "devastating effect" on the record because information cited was developed primarily without cross-examination and based on leading questions.

The McNutts claim that had they been allowed to explore the educational history of girls in the Hostetlers' church, and particularly in the Hostetler family, this would have led to exploration of issues that directly relate to the best interest of the children. The McNutts maintain that had these issues been factually developed, they could have then been used to

12

cross-examine expert witness Mr. Roberts when he testified regarding the dangers of a break in the bonding between the Hostetlers and the children.

We hold that the circuit court did not err by refusing to allow the McNutts to fully participate in the Hostetlers' petition hearing. The McNutts initially propounded discovery on the Hostetlers, and the Hostetlers objected. The circuit court's order regarding the discovery request stated that there would be no discovery between the adoptive petitioners because the circuit court would consider the individual adoption petitions independently, rather than as adversarial.

A discussion was had between the circuit court and the parties' attorneys at the outset of the Hostetlers' hearing. The McNutts' attorney requested to participate in the Hostetlers' hearing, even though the Hostetlers' attorney was not allowed to participate in the McNutts' hearing. The Hostetlers objected to the participation except as to the anticipated expert witness. Prior to testimony of any witnesses, the circuit court stated that the McNutts' attorney's participation would be limited to the expert witness, again stating that the hearing was not adversarial. Further, the circuit court advised the McNutts' attorney that if he wanted to make a record at any time, he was welcome to do that.

The McNutts' attorney did question Mr. Roberts, the expert witness offered by the attorney ad litem, as well as Ms. Case, the DHS adoption specialist for the minor children, who was not offered as an expert witness. Ms. Case was the designated DHS representative at the hearing on the McNutts' petition as well, but they did not call her as a witness at that hearing.

The remaining witnesses called at the Hostetlers' hearing were the Hostetlers, Mr. Kaufman, the education witness, and Anita Miller, a character witness. Although allowed to do so for any witness during the hearing, the McNutts' attorney only proffered questions at the end of the testimony of Mr. Kaufman. However, none of the questions posed in the McNutts' brief were proffered at the Hostetlers' hearing and are offered for the first time on appeal. In response to the McNutts' assertions that the witnesses at the Hostetlers' petition hearing were not adequately examined, we note that the record indicates that, during the testimony of the witnesses, not only did the DHS attorney and the attorney ad litem question the witnesses, the circuit court also questioned all the witnesses except Ms. Miller.

At the close of the testimony, the McNutts' attorney requested that the circuit court allow him time to develop rebuttal expert testimony. The circuit court granted the request, giving him seven days to do so. The remaining attorneys were to have an opportunity to question the expert on the witness stand and were to be provided with any written report forty-eight hours in advance. While the McNutts did provide the circuit court with documents from an alleged expert witness, they did not offer an expert witness for testimony after the Hostetler petition hearing was held on September 17, 2014.

We hold that the McNutts were not prejudiced by not being allowed to fully participate in the Hostetlers' hearing. The McNutts' attorney participated in the cross-examination of the testimony of the expert witness called by the attorney ad litem, and although provided an opportunity to offer the testimony of their own expert witness, the McNutts failed to do so. Accordingly, we affirm on this point as well.

14

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Walter, Gaston, Allison & Parker*, by: *Derick Allison*, for appellants.

*Paul R. Post, P.A.*, by: *Paul R. Post*, for appellees.

*Tabitha B. McNulty*, Office of Policy & Legal Services, for appellee Arkansas Department of Human Services.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.