Courtney Hudson Goodson, Justice, concurring in part and dissenting in part. I agree with the majority’s rejection of Antonio’s argument with respect to G.L. | sHowever, the proper application of our standard of review requires an affirmance of the circuit court’s finding that Antonio’s consent to the adoption is not required because he failed significantly and without justifiable cause to communicate with his daughter E.M. Therefore, I respectfully dissent from the majority’s reversal on this point. Arkansas Code Annotated section 9-9-207(a)(2)© (Repl. 2015) provides that “[c]onsent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause to communicate with the child.” It is not required that a parent fail “totally” in these obligations in order to fail “significantly” within the meaning of the statute. Lucas v. Jones, 2012 Ark. 365, 423 S.W.3d 580. It denotes a failure that is meaningful or important. Racine v. Nelson, 2011 Ark. 50, 378 S.W.3d 93. A circuit court’s 'finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. In re Adoption of A.M.C., 368 Ark. 369, 246 S.W.3d 426 (2007). “We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to a trial judge’s personal observations when the welfare of young children is involved.” In re Adoption of Lybrand, 329 Ark. 163, 169, 946 S.W.2d 946, 950 (1997) (quoting In re K.F.H., 311 Ark. 416, 423, 844 S.W.2d 343, 347 (1993)). Further, we have stated repeatedly that the circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. In re Adoption of M.K.C., 2009 Ark. 114, 313 S.W.3d 513. |9In this case, it is undisputed that Antonio did not see the children at all between December 2009 when he and Renita Price separated, and October 2012 when they were divorced. During this near three-year period, Antonio sent the children a grand total of three short emails in August and September 2010 after Renita twice invited him to establish contact with them and only after the children had emailed him. Thus, the question is whether Antonio’s significant failure to communicate with the children is justified. On appeal, Antonio contends that his failure to establish contact with the children is excused because he was laboring under a no-contact order and because he did not know where the children were located. The protective order prohibited Antonio from having any contact with Renita, but the order did not cover the children. The record reflects that Renita provided Antonio with an email address so that he could communicate with the children in August 2010. He also received a letter in August 2010 with a return address of a local office of the Arkansas Department of Human Services, and Antonio admitted that he thought that the agency acted as a “go-between” for communication. Renita also provided Antonio a phone number for his counselor to call for the purpose of setting up visitation with the children. Thus, the evidence demonstrates that Antonio was able to establish contact with the children without violating the no-contact order. However, other than the three emails, he did not avail himself of those opportunities. In holding that Antonio’s failure to communicate with the children is excused based on the existence of the protective order, the majority shares Antonio’s skepticism of Rente’s overtures asking him to reach out to the children and his notion that she was “setting him linup.” It also accepts at face value Antonio’s testimony that his fears were corroborated by confrontational phone calls that Antonio alleged Renita had made to probation officers. However, the circuit court was not required to believe Antonio’s assertion that he thought he was being set up or that the alleged phone calls even took place. On this point, the circuit court also heard the testimony of Renita. She testified that she reached out to Antonio, extended an olive branch to him, and did everything in her power to help him establish a healthy and meaningful relationship with the children. Renita also read aloud to the court the August 2010 letter she had written to Antonio updating him on the progress of the children; informing him that the children often asked about him and that they missed him and loved him; stating her belief that it would be good for the children to communicate with him; and inviting him to begin talking to them on a regular basis by phone, email, or Skype. Renita also stated in the letter that “I just want our children to know they have' two parents who have—-who love them both very much. The current No Contact Order bars you from contacting me. It does not prohibit me from contacting you or prevent you from talking to our children.” Further,- in her testimony, Renita stated that she had received advice from attorneys that Antonio had a right to hire an attorney to establish visitation because he retained parental rights, and she noted that his defense counsel in Washington had contacted her on Antonio’s behalf. The circuit court was in a far superior position to assess Renita’s motives for seeking-to initiate contact between Antonio and the children and could reject Antonio’s alleged belief that he was being set up. In addition, the majority gives full credence to Antonio’s testimony that he consulted an attorney and his probation officer about establishing visitation over Skype and “was [^advised that this ran a risk of violating the protective order.” Once again, the circuit court could discount the testimony that this was the advice he received. Instead, the circuit court could accept, and obviously did find credible, Antonio’s testimony that his probation officer told him that he would not be in violation of the protective order if he kept the conversation with the children about the children. This testimony, as well as Renita’s testimony on this subject, certainly casts doubt on Antonio’s claim that the no-contact order prevented him from communicating with the children. Applying the proper standard of review, it cannot be said that the circuit court’s finding is clearly erroneous. In such matters we must defer to the apparent credibility determinations made by the circuit court. The majority falls into error by ignoring our standards and reaches its result by according more credence to Antonio’s testimony than it was given by the circuit court. The protective order did not prohibit Antonio from contacting the children. He had addresses where he could have sent cards or messages to them. Antonio had the ability to hire an attorney to establish visitation without violating the protective order. As Renita offered, he could have utilized his counselor to arrange visits with the children. I would affirm the circuit court’s ruling that the no-contact order did not justify his failure to communicate with the children for almost three years. I also take issue with the majority’s finding that Renita’s decision to withhold her precise location from Antonio hindered his ability to maintain contact with the children. This conclusion wholly disregards the evidence presented at the hearing. The record reveals that Antonio and Renita married in Arkansas and lived here following the wedding. Renita testified that her mother had lived in the same home in Arkansas for twenty-five years, and | iashe estimated that they had visited her twenty or more times during their marriage. It is also significant that Antonio received a letter with a return address of a local agency in Arkansas. On this record, Antonio’s claim that he had no way of knowing the children’s whereabouts is simply untenable. From the information available to Antonio pointing to a location in Arkansas and the open line of communication extended by Renita as discussed in the first point, the circuit court could easily dismiss Antonio’s contention that not knowing the children’s precise location prevented him from communicating with them. Because the circuit court’s finding is not clearly erroneous, I would affirm on this point as well. On this issue, the majority emphasizes the fact that Antonio exercised visitation following the divorce and that his post-divorce conduct should be considered in determining whether his consent to the adoption should be required. I can agree with that statement for the purposes of this appeal, as Antonio’s character was on full display during his supervised visitation. After the March session, the therapist recommended that it was in the children’s best interest to discontinue Antonio’s visits with the children because of his behavior. According to the therapist’s notes, Antonio was confrontational with Renita during the sessions which upset the children, who remembered the incidents of domestic abuse perpetrated by Antonio against Renita. E.M. expressed fear of Antonio and stated that she did not wish to visit him at his house. In one session, Antonio accused Re-nita of kidnapping the children. On another occasion, E.M. innocently mentioned Price, and Antonio told the children that Price could not be their father because he was married to someone else. When the therapist advised Antonio that his comment was not appropriate, 11SAntonio responded by saying, “This is my time with the children and I can say anything I want.” This caused G.L. to begin banging his head on the table. The therapist commented that Antonio was antagonistic and that his statements were not uplifting, not encouraging, and not appropriate in front of the children. Following one visitation, Antonio confronted the therapist in the parking lot as she was walking to her car. She stated that his actions were “threatening and intimidating.” The therapist also advised that Antonio should seek help from another counselor to deal with his issues. What is most disturbing about the majority’s opinion is that Antonio is portrayed as a victim. The majority blames the no-contact order and Renita’s decision to remove herself and the children fróm an atmosphere of abuse to excuse Antonio’s failure to communicate with the children over a three-year period. The moral of the opinion is that one may commit acts of domestic abuse for which a protective order is necessary, and yet gain exoneration for not contacting one’s children without lifting a finger to take advantage of offers to establish communication or to pursue other reasonable means to maintain contact with the children which do not involve the violation of the no-contact order. The message sent by this opinion is beyond disappointing. Antonio is not a blameless victim. He was not without recourse to initiate contact with the children. Any obstacles Antonio faced were not insurmountable. The circuit court’s decision should be affirmed.